No. 43,642

Curtis Timmons, Administrator c. t. a., of the estate of Lawrence C. Goetz, deceased, *Appellant,* v. T. A. McGaughey et al., *Appellees.*

(392 P. 2d 835)

Opinion filed June 6, 1964.

*Harry L. Hobson* and *J. Francis Hesse,* of Wichita, argued the cause, and *Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, James W. Sargent, Stanley E. Wisdom, Cecil E. Merkel, Bruce W. Zuercher, L. D. Klenda, Loren B. Corliss, Charles M. Cline* and *Richard A. Loyd,* of Wichita, were with them on the briefs for appellant.

*Eugene L. Pirtle,* Assistant City Attorney, of Wichita, argued the cause, and *Fred W. Aley,* City Attorney, and *John Dekker,* Director of Law, Wichita, were with him on the briefs for appellees.

The opinion of the court was delivered by

Fatzer, J.: The plaintiff, Lawrence C. Goetz, commenced this action in mandamus to compel the defendant members of the Board of Trustees of the Firemen's Pension Fund of the city of

172

Wichita, to award him a pension pursuant to G. S. 1949, 13-14a09. The district court found that, "the plaintiff has not sustained the burden of proof in this case by a preponderance of the evidence; therefore, will render judgment for the defendants and the writ of mandamus will be denied," and the plaintiff has appealed.

During the pendency of this appeal Lawrence C. Goetz died testate in the state of Missouri on December 31, 1963. Thereafter, Curtis Timmons, Administrator c. t. a. of the estate of Lawrence C. Goetz deceased, filed a motion to substitute the Administrator c. t. a. as the plaintiff-appellant, which motion was allowed. For purposes of this opinion the plaintiff will be referred to as Goetz, the plaintiff, or appellant. The Board of Trustees of the Firemen's Pension Fund will be referred to as the Board, and the mayor of the city, who was chairman of the Board, will be referred to as chairman.

The facts and procedure involved in this case are summarized: When the plaintiff filed his application for a pension with the Board on April 21, 1961, he was 35 years of age and had five years and eleven months service with the fire department of the city of Wichita. He had never sustained any loss of time while performing the duties of a fireman and the only time lost was from mumps, colds, and bronchitis, and so forth. His personnel file disclosed no complaints or loss of time for injuries from fighting fires, including those described in his application for a pension as occurring on August 20, 1958, in March, 1960, and in November, 1960. The plaintiff alleged in his verified petition and in his application for a pension that he became aware of a heart problem on August 20, 1958, while fighting a major fire in the city of Wichita. He alleged that at that time he suffered severe internal pains which necessitated a discontinuance of his activities on that date and that the pain and soreness remained with him for a period of several weeks.

A letter from Dr. Wilford Cox, the physician for the fire department, and one from Dr. Thor Jager were submitted in support of Goetz's application for a pension. On May 11, 1961, plaintiff requested the Board to withhold its decision on his application until it received a letter from Dr. C. T. Hagan, a heart specialist for St. Francis Hospital, and one from B. N. Lies, his family physician. Dr. Lies did not write the Board and Dr. Hagan's letter, hereafter summarized, was written on May 23, 1961. Dr. Jager submitted a second letter.

Dr. Cox's letter referred to the plaintiff's past complaints of chest pains, and stated "any existing condition could certainly be aggravated or hastened by the strenuous type of work and the stresses and strains experienced by an active fire fighter. I believe his [Goetz] existing condition was aggravated by his work as a fireman."

Dr. Hagan advised the Board that the fact Goetz had been a fireman was the "major contributing factor to the production of muscle damage resulting from strenuous physical activity and emotional tension during his latter years with the Fire Department." The letter further stated that "he [Goetz] is suffering from advanced arteriosclerotic disease with evidence of heart muscle damage resulting from this process. Certainly, the underlying problem of this man's difficulty is not related to his having been a fireman."

Dr. Jager's letter stated that he examined the plaintiff and diagnosed his illness as "coronary insufficiency associated with angina pectoris. The coronary insufficiency is no doubt due to arteriosclerotic changes in the coronary arteries with subsequent narrowing of the lumen of these vessels and frequently leading to complete occlusion. Though it is understandable that sudden unusual physical efforts may bring on an attack of chest pain, angina pectoris, the underlying coronary disease is probably not in any way caused by the physical effort. The severe physical efforts associated with his work could bring out the angina pectoris attacks, but it did not cause the arteriosclerosis which causes the coronary insufficiency."

On August 6, 1961, the Board advised the plaintiff by letter that his application for a disability pension had been denied, which stated:

". . . The Doctor's reports were read and discussed. This case had been referred to the City Attorney, who is the legal counsel of the Pension Board. It was the opinion of the Assistant City Attorney that the letters of the Doctors did not connect the disability to the occupation. The Board acted on the opinion of the Attorney and voted to disallow the application for a disability pension."

On December 19, 1961, plaintiff commenced this action. The Board filed an answer denying the pension had been improperly or capriciously denied; that it had no authority to allow the plaintiff a pension purely upon his application therefor; that acting with deliberation and consideration, it was satisfied from all the facts submitted that the application for a pension should have been

denied; that its action was performed pursuant to G. S. 1949, 13-14a09, and that there was no arbitrary or capricious action sufficient to set aside its denial of the plaintiff's pension.

On February 22, 1962, the matter came on for hearing before the district court. Counsel for the plaintiff subpoenaed four firemen, Doctors Cox and Hagan, the secretary of the Board, and the chairman of the Board. While the record indicates the Board was ready for trial, the district court conferred at great length with counsel for the parties, and following those extensive informal proceedings, the court directed the matter returned to the Board for reconsideration.

Pursuant to the order of the court, counsel for the Board caused notice to be given to the Board, to the court and to counsel for the plaintiff, that a rehearing on plaintiff's application for a pension would be held on March 1, 1962. On that date the plaintiff appeared before the Board in person and with his counsel. The chairman announced the Board would hear any evidence plaintiff and his counsel would present. The parties stipulated that the evidence on that day would be limited to "lay" testimony and that a future hearing would be set for medical or other expert testimony. In an effort to establish ground rules for the rehearing, the chairman stated:

"I will ask my fellow Board members to make notation of their questions, and we will hear those after the examination and cross examination. I want the claimant in this matter to be relaxed, and the members of his family. We are here for one purpose. We are not antagonists on this occasion. We are here to get a full exposure of all the facts involved and the Board will give reconsideration to this case. The testimony will be given under oath administered by the court reporter and will be in the nature of a deposition to the Court if it needs to be carried back to the Court."

Thereupon, counsel for the plaintiff agreed that the rehearing was not an adversary proceeding but was a matter between the Board and a former fireman, and that the city legal staff had given plaintiff's counsel the opportunity of looking at the files of past claimants. Counsel stated that the procedure was unusual and he wanted to present everything that the Board might be interested in hearing, and that he was pleased to have the opportunity of having the Board ask questions and that the plaintiff had nothing to hide.

Counsel acknowledged that the medical testimony was complicated as to the causes of a coronary occlusion, and stated:

"The medical profession is not yet ready to reach the point to say precisely what the sole cause of a coronary occlusion is. What they do say is that when one has the conditions that can lead to a coronary occlusion, that is, when one has arteriosclerosis, that then his duties and responsibilities, the emotional stress and strains as a fireman, can aggravate that condition and can, in fact bring on the attack."

Counsel continued:

"We will ask this Board to consider the letters presented by the doctors already before the Board, and the doctors themselves will be here to further explain those letters."

Counsel for the Board stated that the problem was simply to present facts upon which the Board might deliberate and arrive at its decision on two issues:

"(1) Was Mr. Goetz injured or disabled in the performance of his duties as a fireman, and

"(2) Is there sufficient medical testimony to connect that injury or disability to his duties as a fireman in such a manner as to entitle him to a pension?"

Plaintiff was then sworn and testified that after he filed his pension application he called the Board's secretary numerous times; that there was no problem in his mind as to whether he could appear before the Board and he always felt he could appear or be available. His testimony tended to support the allegation of his pension application that he first became aware of a heart condition on August 20, 1958; that in March, 1960, and in November, 1960, he again suffered chest pains while fighting fires, and that he entered St. Francis Hospital in Wichita on February 3, 1961. On February 5, 1961, the plaintiff suffered a coronary occlusion and was not released from the hospital until February 27, 1961. However, he did not make any request of the fire department for admission to the hospital but was directed there by Dr. Cox, and it was during that period that he had his coronary occlusion. He did not go back to work after the hospitalization and he filed an application for pension on April 21, 1961. Plaintiff was assisted in his direct examination by counsel and was cross-examined by counsel for the Board. Other firemen were present to testify in his behalf, but at the conclusion of the plaintiff's testimony the chairman repeated his previous statement that the hearing was for the benefit of the claimant and his family and that the Board was not only attempting to ascertain the facts for its benefit but to serve the court in any use it might make of the proceedings before the Board.

He again reminded the parties that the Board was not in a position of an adversary or antagonist; that it was assembled to hear the facts and to give a decision based upon the merits, and stated that Mr. Goetz had seen a good many doctors in the last couple of years; that the matter was a very serious one and one which the Board wanted to resolve, and he moved the appointment of three doctors; namely, Dr. James Donnell, Dr. Lew Purinton, and Dr. Thor Jager, to serve as an advisory panel to the Board. The motion carried and the following colloquy took place:

"Mr. Hobson: Your Honor, it had been our intention to present additional lay testimony; however, if the Board has narrowed its questions to those that it has indicated, we have been of the opinion from the beginning that those are the issues with which we are interested, and if the Board is of like opinion at this time there perhaps is no necessity of putting on additional lay witnesses. We had anticipated putting them on this morning, but if we are now to the point of the role of a pre-existing condition and whether or not aggravation is sufficient to grant the pension as a matter of law, then we would perhaps be wasting all of our time to put on additional lay testimony.

"Mayor Lindsley: Mr. Hobson, it is not the intent of this Board at this time to close off the hearing simply with the medical testimony, but I was trying to, for the benefit of everyone, determine what our next step would be, and if there is any additional testimony that you wish to present for Mr. Goetz, we will be glad to entertain that. I was just trying to set up an order of procedure. I am sure that the Board will have further questions after we hear the medical testimony.

"Is this agreed and understood?

"Mr. Hesse: It is understood."

Following the adjournment of the rehearing, the matter was resumed on April 25, 1962. The chairman stated that all witnesses giving testimony would be sworn. Counsel for the plaintiff stated they were ready to proceed and understood the Board had requested that Doctors Purinton and Donnell testify. Doctors Purinton and Donnell were examined by counsel for the Board and cross-examined by plaintiff's counsel at great length and their testimony is summarizd: That the appellant may not have suffered a coronary occlusion; that there was no occupational connection between the disability and the performance of the duties of a fireman, and that a considerable list of other maladies could have caused plaintiff's complaints, such as an infection or inflammation around the surface of the heart such as pericarditis; the possibility of an acute inflammation in the pancreas; a hiatal hernia producing herniation of a certain amount of the stomach up through the

diaphragm and into the chest which might produce pain, and other things that could cause the same symptoms.

Counsel for the plaintiff expressed disappointment that the Board did not seek the advice of Dr. Jager. However, it was pointed out that Dr. Jager's original opinion had been considered by the Board; that he was a member of the medical panel and had at the time of the rehearing written the Board that he had conferred with Doctors Purinton and Donnell and that he had not changed his opinion of plaintiff's eligibility.

During the rehearing, reference was made to the testimony of a written report of Dr. Lies. Counsel for plaintiff stated that no letter from him has been submitted to the Board. When inquiry was directed to counsel whether Dr. Lies would testify or give a written medical report to the Board, he stated:

"That depends upon the nature that these proceedings take. If this is an adversary proceeding I suppose we will have to produce everybody under the sun. At the moment I see no reason to produce Dr. Lies but I will not say that we will not produce him. If it appears necessary, then Dr. Lies will appear and testify."

It should be noted that counsel for plaintiff furnished the records of St. Francis Hospital to members of the medical panel and that Dr. Lies' file was part of those records. At the conclusion of the hearing counsel for plaintiff requested the Board on the evidence presented to grant plaintiff's pension.

Upon due consideration of all evidence, the Board denied plaintiff's pension.

On August 30, 1962, the litigation was again resumed before the district court. The court limited the issues to whether the Board acted arbitrarily and capriciously in denying plaintiff's application for a pension. Plaintiff's evidence consisted of his testimony, the testimony of the chairman of the Board, the secretary, District Fire Chief Carney, and Fire Chief McGaughey. The secretary testified he was custodian of the Board's records, and he produced plaintiff's pension application file, all the letters of Doctors Jager, Hagan and Cox, the city attorney's letter, the Board's minutes and the pension application file of Fireman Morte B. Harris, which were offered in evidence and all were admitted except Harris' file. The court sustained the Board's objection to Harris' file upon the ground that because it had granted pensions in other cases such action had no bearing upon the plaintiff's claim. Plaintiff then offered in evidence the pension application files of ten other firemen. Those

ten pension files were marked for identification and were "proffered" to show that pensions were granted on virtually identical evidence to that contained in the plaintiff's file. The court observed the "proffer" was improper, and there being no further effort upon the part of counsel to make a sufficient "proffer," those files were not admitted into evidence.

Carney testified that the doctors' letters and plaintiff's application file impressed the Board with the probability that he would not be able to get a pension; that in searching for a possible way to allow a pension, the matter was referred to the city attorney for an opinion; that he would have voted "no" against the pension with or without the city attorney's opinion, and that no coercion was brought upon him when he seconded the motion to deny the plaintiff's application for a pension.

McGaughey testified that he was a member of the Board by virtue of his position as fire chief and that Dr. Cox had been the Firemen's Relief Fund doctor for many years.

The chairman of the Board testified that he did not attend the Board meeting in August, 1961, when the plaintiff's application for a pension was considered; that during his tenure, two or three applications for pension were considered and no doctors were called before the Board to give testimony and it was the Board's custom to proceed on the basis of medical opinions submitted in writing.

The plaintiff rested his case and the Board's demurrer to the evidence was overruled.

The Board called no witnesses, but offered the transcript of the proceedings taken before the Board by a certified shorthand reporter on March 1, 1962, and on April 25, 1962. The court admitted the transcript in evidence over plaintiff's objection but in doing so stated that it was admitted for one purpose only—whether the Board acted in an arbitrary or capricious manner. The Board then rested and the plaintiff offered no rebuttal evidence. The court deferred argument until it had an opportunity to read the evidence submitted by the Board.

On August 31, 1962, the matter was argued, and in announcing its decision the court stated that it had read the transcript pertaining to the matter before the court, and having considered all the evidence it found the plaintiff had not sustained the burden of proof by a preponderance of the evidence, and entered judgment for the Board.

The plaintiff first contends that the district court erred in refusing to admit in evidence the files of the eleven firemen who had been retired on pension by the Board. He argues that when the issue is whether the action of an administrative board is arbitrary or capricious, evidence of its action on prior occasions under similar circumstances is admissible; hence, it was proper to show that each of the eleven firemen had been retired by reason of heart ailment on medical testimony consisting of letters written to the Board containing virtually identical language with the language in the letters from Doctors Cox and Jager submitted on behalf of the plaintiff, and that in Harris' case, he was granted a pension and the plaintiff was denied one.

In this connection we state plaintiff's second contention that the district court erred in admitting in evidence over his objection, the transcript of testimony of various witnesses taken at the rehearing in March and in April, 1962, which the plaintiff states concerned "matters immaterial to the issue before the court."

As previously indicated, when this case was first called for trial on February 22, 1962, the district court, after conferring at length with counsel for the parties, directed that the matter be returned to the Board for a rehearing. Whether the court was justified in its action is not before us, and plaintiff makes no complaint of the return of his application to the Board for rehearing. Plaintiff received notice of the rehearing and appeared and fully participated in those proceedings, introduced evidence in his behalf, examined and cross-examined witnesses and at the conclusion of the rehearing requested that the Board allow his pension. Counsel for plaintiff acknowledged to the Board that the rehearing was not an adversary proceeding; that they wanted to present everything the Board might be interested in hearing and were pleased to have the opportunity of having the Board ask questions of the plaintiff. The record indicates the Board went to great length in seeking medical advice and upon its own motion, without a request therefor by either the city attorney or the plaintiff, appointed a three-man medical panel composed of Doctors Purinton, Donnell and Jager to examine the plaintiff and his medical records. Any possiblity that the Board may have misvalued the letters of Doctors Cox, Hagan and Jager were removed by the Board's appointment of the three-man medical examining panel. That panel re-examined the plaintiff and his records and two of the three

members testified they were not even certain the plaintiff suffered a coronary attack, but were certain that any disability he sustained was not connected to his occupation as a fireman; nor was a pre-existing condition aggravated by the performance of his duties as a fireman. It is evident that the testimony obtained by the Board failed to supply the evidence upon which the plaintiff's pension could have been allowed, but, on the contrary, apparently satisfied the Board that his disability was not service connected. In arriving at its conclusion that the plaintiff was ineligible under the statute for a pension, the record discloses that the Board took into consideration all of the medical evidence before it, including the letters of the three doctors submitted by plaintiff when he filed his application for a pension.

The plaintiff submitted his case to the district court and to this court on the basis of the record when the Board first denied his pension on August 6, 1961. When the plaintiff failed to question the action of the Board at its rehearing in March and in April, 1962, he rendered moot his attempted limitation of the issue of alleged arbitrary action of the Board at its first hearing. The issue was and is whether the Board acted in an arbitrary and capricious manner in denying plaintiff's pension. Any uncertainty in that area was completely resolved at the rehearing, and we think the district court did not err in admitting into evidence the transcript of the rehearing over the plaintiff's objection. Those proceedings were pertinent and material on the question whether the plaintiff's application for a pension should be granted and was competent on the question whether the Board acted unreasonable, arbitrary or oppressive under all the facts and circumstances. (*Brinkley v. Hassig,* 130 Kan. 874, 289 Pac. 64; *Capland v. Board of Dental Examiners,* 149 Kan. 352, 88 P. 2d 597; *Marks v, Frantz,* 183 Kan. 47, 325 P. 2d 368.) The plaintiff cites *Anderson v. Dunn,* 189 Kan. 227, 368 P. 2d 6, as authority that the transcript of the rehearing was erroneously admitted in evidence. That case is clearly distinguishable from the case at bar. There, the plaintiff had the burden of introducing evidence to show that his property had been over assessed and that he was justified in protesting his taxes and was not one to review whether the County Board of Equalization or the State Board of Tax Appeals acted arbitrarily or capriciously.

In view of our conclusion that the transcript of testimony at the rehearing was properly admitted in evidence, it necessarily follows

that since the Board had conflicting medical testimony whether the plaintiff was disabled in the performance of his duties as a fireman and whether he had a pre-existing condition which was aggravated by those duties, made this case entirely different from those of the eleven firemen whose pension files were offered in evidence, and the district court did not err in sustaining the Board's objection to their admission in evidence.

Other points have been argued by the plaintiff: that the Board's action in denying the pension did not represent an independent determination; that its decision was contrary to the evidence before it; that the plaintiff had no notice of the Board's hearing; that the Board misapplied the statute (G. S. 1949, 13-14a09); and that the district court erred in denying the writ of mandamus. The points are not well taken. The findings of the Board were supported by competent and substantial evidence and from our review of all the facts and circumstances, its denial of plaintiff's application for his pension was not unreasonable, arbitrary or oppressive, and the district court did not err in denying the writ of mandamus. Well established rules prescribing the duties of a court in determining whether the procedure employed by an administrative board in reaching its decision, and whether the decision itself as rendered is unreasonable, arbitrary or oppressive, are set forth in *Marks v. Frantz*, supra, Syllabi 2, 3 and 4, and the reader is referred to that decision and the authorities cited therein.

We have carefully reviewed the record and are compelled to conclude that the district court did not err in denying a writ of mandamus.

The judgment is affirmed.