ALICE COATES *et al.* v. P. J. NUGENT *et al.*

No. 15,060.    (92 Pac. 597.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Establishment of Sewer Districts—Apportionment of the Cost.* The provision of the statute regarding the establishment of sewer districts that "where any property has paid its full proportion for general sewers and drains in one district it shall not be transferred to any other and made liable for the construction of sewers or drains therein" (Laws 1903, ch. 122, § 149) is intended to prevent charging property which has already contributed to the cost of one sewerage system with a part of the cost of another which as to such property may be regarded as a substitute for the first; it does not forbid the creation of a minor division or subdistrict out of a part of the territory of a principal district and charging the property therein with the cost of a lateral or tributary sewer which is constructed for the special benefit of such property, nor the further creation of a yet smaller district within such subdistrict and charging it with the cost of subsidiary sewerage designed for its especial benefit.

2. ——— *Compliance with the Statute—Evidence.* The evidence in this case examined and held not to show any violation of the statute referred to.

3. ——— *Special Benefits—Conclusiveness of Legislative Determination.* The determination of a legislative body that a certain tract of land is specially benefited by a proposed local improvement is conclusive upon a court in any case admitting of substantial difference of opinion. If the owner seeks to enjoin the enforcement of an assessment upon the ground that his land receives no benefit he assumes the burden of showing conclusively that no such benefit is possible, and a failure on his part to produce evidence regarding conditions by which the matter might be affected is fatal to his success.

4. ——— *Evidence Insufficient to Negative Possibility of Benefit.* Where a tract of land in front of which a sewer has already been constructed is charged with a part of the cost of an extension along the same street, proof that it is not at the present time drained into such extension does not conclusively establish that it cannot possibly receive a benefit therefrom.

Error from Wyandotte court of common pleas; William G. Holt, judge. First opinion filed June 8, 1907. Affirmed. Rehearing granted July 5, 1907. Opinion on rehearing filed November 9, 1907. Reaffirmed.

*E. H. Wooley,* and *W. L. Cowden,* for plaintiffs in error; *Pratt & Dana,* and *Ward, Hadley & Neil,* of counsel.

*H. L. Alden,* city counselor, and *Ralph Nelson,* city attorney, for defendants in error.

*Per Curiam:* A sewer was built along a street of Kansas City, Kan., running east and west, for a distance of five blocks, and its cost was charged against a sewer district (or subdistrict) consisting of the ten abutting blocks and the two blocks lying immediately east of them. Thereafter such sewer was extended one block further to the east, the cost of this extension being charged to a further subdistrict consisting of the four half blocks surrounding the point from which such extension was made—the east end of the sewer

first built. Owners of property in this second subdistrict brought a suit for an injunction to test the validity of such proceedings.

While the right asserted is claimed under the statute, the question presented is really one of justice and fairness. The argument made in support of the plaintiffs' contention is that, inasmuch as the property of the new subdistrict bore its proportionate share of the cost of building the sewer for five blocks, it cannot equitably be charged with more than a like proportion of the cost of the extension—that the cost of the one block extension should have been apportioned in the same way as that of the five blocks of sewer first built, and assessed against all of the first subdistrict. The difficulty with this argument is that it assumes that what is called the extension is simply in all respects one-sixth of a sewer six blocks long—that the relation of each block to the entire sewer is the same as that of every other block—that the relation of each block to the part of the sewer on which it abuts is the same as that of any other block to the corresponding part of the sewer. Of the correctness of this assumption we have no means of judging. It may be that the local topography is such that all of the twelve blocks comprising the original subdistrict were benefited by the building of the five blocks of sewer first constructed, and that the four half-blocks, and they only, were benefited by the new sewer one block long, called the extension. If so the apportionment adopted was obviously equitable, and if it was equitable we do not understand that the plaintiffs claim there is any provision of the statute that would defeat it. The record shows nothing of the grade, or of the character of the soil, or of other conditions that might affect the matter. The situation may have been such that the council might reasonably have regarded the apportionment made as a just one, and in that case their decision is not subject to review.

The judgment denying the injunction is affirmed.

OPINION ON REHEARING.

The opinion of the court was delivered by

MASON, J.: The facts of this case are sufficiently stated in the opinion filed upon the original hearing. At the time that opinion was written the court regarded it as covering all the really debatable ground involved. But upon a petition for a rehearing it was especially urged that the decision was inconsistent with the statute, and a rehearing was allowed in order to give a full opportunity for the presentation of that contention. The statutory provision invoked reads as follows:

"Where any property has paid its full proportion for general sewers and drains in one district it shall not be transferred to any other and made liable for the construction of sewers or drains therein." (Laws 1903, ch. 122, § 149.)

In the present instance the council created what was known as "sewer district No. 5," comprising an entire ward, and evidently being one of the several main districts into which the city was divided. Then a part of this territory was erected into what was called "subsewer district No. 2," consisting of twelve blocks lying six on each side of a street. A sewer was built along this street for a distance of five blocks, the cost being charged upon the whole subdistrict. Still later what was designated as "subsewer district No. 13" was formed from the halves of four of these blocks, two of which fronted upon that part of the street in which the sewer had already been built, the other two facing the part which was as yet without a sewer. The sewer was then extended for one block at the charge of the new subdistrict.

It is true, therefore, as claimed by the plaintiffs in error, that the four half-blocks referred to, after having been charged with their full proportion of the cost of a sewer in subdistrict No. 2, were in a sense transferred to subdistrict No. 13 and made liable for the

construction of a sewer therein; but whether this was a violation of the statute quoted depends upon the relation of the districts or subdistricts to each other and to the property affected. The purpose of the statute plainly is to protect property which has already contributed to the cost of one general sewerage system from being charged with a part of the cost of another and independent system which as to such property may be regarded as a substitute for the first. It does not forbid the creation of a minor division or subdistrict out of a part of the territory of a principal district and charging the property therein with the cost of a lateral or tributary sewer designed for its especial benefit. No one would question the propriety of building the sewer here involved at the cost of the property benefited, notwithstanding such property, with the rest of the territory of district No. 5, may already have been taxed to pay for a main sewer for that district, although the statute does not in terms authorize the subdivision of districts or use the word "subdistrict." And precisely as a main district may be divided into subdistricts for the construction of subsidiary sewers for their peculiar benefit, so if circumstances permit these secondary districts may be again divided and the process continued indefinitely. No just cause of complaint can arise so long as each new sewer constructed is paid for by the property benefited, and is designed to make the sewerage already paid for available, and not to become a substitute for it.

For the plaintiffs in error to bring themselves within the protection of the statute it is necessary for them to show that subsewer district No. 13 was a division of equal rank with subsewer district No. 2. The council, however, manifestly intended it as a subdistrict of a subdistrict. The name by which it is designated is of course immaterial. Its real character is the vital consideration. If the four half-blocks of which it is composed were benefited in common with the other prop-

Coates v. Nugent.

erty of subdistrict No. 2 by the five blocks of sewer first laid, and the additional block was for their especial benefit—to enable them to connect with the sewer already constructed, then there was neither injustice nor illegality in requiring them to pay for a share of the first five blocks of sewer and for all of the last. The council must be deemed to have decided that these conditions existed. A court cannot disturb that finding unless upon a conclusive showing to the contrary.

The extent to which a court may inquire into the determination of a legislative body as to how much a particular tract of land is benefited by a local improvement, or whether it is benefited at all, is thus stated in volume 2 of the third edition of Cooley on Taxation:

"It has been repeatedly decided that the legislative act of assigning districts for special taxation on the basis of benefits cannot be attacked on the ground of error in judgment regarding the special benefits, and defeated by satisfying a court that no special and peculiar benefits are received. If the legislation has fixed the district, and laid the tax for the reason that, in the opinion of the legislative body, such district is peculiarly benefited, its action must in general be deemed conclusve. No doubt there may be exceptions; and one of these would be a case in which, under pretense of apportionment, a work of general benefit had been treated as a work of merely local consequence, and the cost imposed on some local community in disregard of the general rules which control legislation in matters of taxation. Another is where, under pretense of apportionment, a basis has been fixed upon which cannot possibly, as regards the particular work to be constructed, be just; as where a statute assumed to confer upon a city the authority to levy sewer assessments upon any property supposed to be benefited in proportion to area, but not limiting the assessment to lots along or near the sewer, or to lots contiguous to each other, or even to such as received direct or peculiar benefits. . . . It is conceded that the legislative judgment that a certain district is or will be so far

36—76 KAN.

specially benefited by an improvement as to justify a special assessment is conclusive, and that its determination as to what shall be the basis of the assessment is equally conclusive. To invoke the intervention of a court for relief against the results of its conclusion is to invoke the judicial authority to give its judgment controlling effect over that of the legislature, in a matter of the apportionment of a tax, which by concession on all sides is purely a matter of legislation. This is confessedly inadmissible in any case where the legislative action is not manifestly colorable and arbitrary. If either the rule prescribed for the apportionment or the assessment made under it is so grossly and palpably unjust and oppressive as to give demonstration that the proper authority had never determined the case on the principles of taxation, the wrong must always be open to correction. A man's property is not to be taken from him with impunity, and without redress, by simply calling the appropriation an assessment, when it is not such in its elements." (Pages 1208, 1256.)

Many decisions tend still further to circumscribe the field of judicial interference. For instance, in *Herman v. Schulte*, 166 Mo. 409, 66 S. W. 163, it was said:

"Not only is it the rule in this state, as asserted above, 'that when the matter of establishing sewer districts is entrusted by the legislature to the common council its action in the premises is conclusive in a collateral attack,' but the rule generally stated is that where a municipal body vested with the exercise of a power acts, its act under that power, in the absence of fraud, is conclusive upon the courts, whether the attack made thereon is collateral or direct; and the fraud that will authorize the court's interference in the matter of municipal action is not that the power exercised or the ordinance passed has resulted in an individual hardship in its execution, or that in the working out of the general scheme designed by an ordinance an individual burden is imposed without a corresponding benefit conferred (a necessary incident to any system of general taxation or special assessment yet devised for governmental maintenance and support), but only in those cases when the act of the municipal body is so unreasonable, oppressive and subversive of the rights of the citizen in the general purpose declared as to clearly indicate and leave but one

inference—that of an attempted abuse rather than the legitimate use of a power enjoyed; and of this qualified and limited assertion of right in the courts to interfere with municipal legislation much doubt is felt." (Page 417.)

If the plaintiffs in error were entitled to relief in the present case it could only be upon the ground that their land could not possibly derive an advantage from the last sewer built. It is true that it is difficult to understand how that part of subdistrict No. 13 in front of which the sewer had already been constructed could be benefited by its extension along the same street, but in the absence of any information whatever as to the local conditions except as shown by the plat a court cannot say that no such benefit was possible. The agreed statement of facts upon which the case was submitted recited that a part of the territory of subdistrict No. 13 *never had been* drained into the old sewer, and that the remainder *was not* drained into the extension. These recitals, so far from indicating that such drainage could not be effected, seem to imply the contrary.

The plaintiffs in error having failed to demonstrate that the action of the council was wrong, and having failed to bring before the court all the facts material to an investigation of that question, the trial court properly refused an injunction. The judgment is reaffirmed.