No. 18,982.

WILLIAM H. RANSOM et al., *Appellants,* v. W. W. MIN-
NICK, as Mayor of Wichita, etc., et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. CITIES OF THE FIRST CLASS—*Power to Construct Sewers—
Statutes.* Chapter 119 of the Laws of 1907 does not repeal
nor limit the operation of section 1013 of the General Statutes
of 1909, and cities of the first class having a population of
more than 50,000 may construct sewers under either statute,
as the conditions in the city may justify or require.

2. SAME—*Proceedings for Construction of Sewer—Substantially
in Conformity to the Statutes.* A resolution passed by the
city commissioners declaring that they had determined it to
be necessary to construct a sewer in a certain part of the
city, the boundaries of which were described, and directing
the publication of the resolution and the preparation of plans,
specifications and estimates of the proposed improvement is
sufficient to institute the proceedings for the construction of
a sewer and gave the commissioners jurisdiction to proceed
with the improvement. It was not essential that the resolu-
tion should show the definite location of the sewer in the
district, its character or the cost of the same.

3. SAME—*Estimates and Plans Followed Sufficient.* The detailed
estimates prepared for the improvement and the plans by
which the cost of the sewer was apportioned and levied upon
the property examined and held to be sufficient.

Appeal from Sedgwick district court, division No. 2;
THORNTON W. SARGENT, judge. Opinion filed July 7,
1914. Affirmed.

*W. P. Campbell,* of Wichita, for the appellants.

*Earl Blake,* and *Robert C. Foulston,* both of Wichita,
for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by property
owners to enjoin the construction of a sewer in the city
of Wichita, the issuance and sale of improvement bonds
and the levy of assessments to pay for the same. At

the trial the court made findings of fact from which it appears that on May 24, 1911, the city commissioners granted a petition for a sewer and resolved that it was necessary to construct the sewer in question, designated as submain C of sanitary sewer No. 20, that the city engineer should prepare the proper plans, specifications and estimates for the construction of the sewer, and that the city clerk should make proper publication thereof. The court also found that due publication of the resolution was made; that an estimate of the cost of the sewer was submitted by the city engineer, together with plans and specifications therefor, and that they were approved; that notice for the reception of bids for the work was published; that appraisers were appointed on July 17, 1911, and their report duly approved on September 5, 1911; that on July 24, 1911, the bids were opened and the contract for the building of the sewer awarded; that on September 1, 1911, the commission passed an ordinance declaring the necessity for the sewer in question and authorizing the commissioners "to do everything necessary in the premises and creating and defining a benefit district therefor"; that on September 27, 1911, the amounts found by the appraisers were, by ordinance, apportioned and charged to the property in the "sewer district"; that on November 6, 1911, an ordinance was duly passed, approved and published "purporting to formally create a benefit district described in said resolution"; and that later bonds were duly issued to pay for the improvement. It appears that the city, which had a population of more than 50,000, contemplated and took steps towards the building of a main and intercepting sewer the full length of the city and in territory already provided with sewers, which was designated as sanitary sewer No. 20, but the construction of this sewer was perpetually enjoined in an action brought for that purpose.

In this action one of the principal questions was whether the proceedings for the construction of the

sewer were taken under and governed by section 1013 of the General Statutes of 1909 or by sections 1177 and 1178 of that compilation. The court determined that section 1013 was the governing statute and that it had been constructed in pursuance of its provisions. That section provided a method for the construction of sewers in cities of the first class. It has remained practically unchanged for a quarter of a century or more; and under it most of the sewer systems in cities of that class have been constructed. The preliminary steps authorizing the construction, as well as the means by which the improvements are made, are the same as are provided for the building of sidewalks and pavements in cities of that class. It contains a clause that if any property has paid its full proportion for sewers and drains in the district it shall not be transferred to another district nor made liable for sewers therein. Sections 1177 and 1178 were enacted in 1907 (Laws 1907, ch. 119, §§ 1, 2), and by that act a city having a population of more than 50,000 is authorized to build a system of main and intercepting sewers through territory in which sewers have been constructed, and to levy assessments for new sewers on property which had been previously assessed for the construction of sewers already built. Evidently this was a supplementary act under which additional sewers might be provided for districts of a city that had already constructed sewers which were inadequate to meet the public necessities. It was not intended, we think, to limit the operation of the earlier statute in cities having a population of more than 50,000. They could extend the sewer system by establishing new districts unprovided with sewers and where the property therein had never been assessed for sewers under section 1013, but if a city having a system of sewers which was inadequate it could avail itself of the act of 1907 and build main and intercepting sewers, charging a part of the cost of the same to property in dis-

tricts which had already paid for sewer benefits. When the law of 1907 was enacted it applied to Kansas City only, and was doubtless suggested by the necessity for additional sewerage or drainage in portions of that city where the system was insufficient. There is room for the application of both acts in cities having a population of over 50,000, and nothing in the later law indicates a purpose to deprive such cities of the benefit of either act as the circumstances may demand. The district in question included territory which was without a sewer, and the property therein had never been assessed for a sanitary sewer. While it was originally intended that it should empty into sewer No. 20, which was not built, it did connect with the established system in that city. It is an independent district which falls fairly within the terms of section 1013, and apparently it was constructed in pursuance of the provisions of that law.

It is contended, however, that the officers of the city failed to follow the provisions of that act. It is insisted that the preliminary resolution passed on May 24, 1911, did not meet the requirements of the law nor give the commissioners jurisdiction to construct the sewer. In it was a declaration that it was necessary to construct the sewer in a certain portion of Wichita, the boundaries of which were defined. It also directed the city engineer to prepare and present plans, specifications and estimates of the sewer and the city clerk to make publication of the resolution. Appellants contend that it is defective in not stating where within the boundaries defined the sewer was to be laid, and also that there were then no plans and specifications from which the property owners could ascertain the character and extent of the improvement. The contention is that a property owner did not have such information as would enable him to determine for himself the expense which would necessarily fall on his property nor to decide whether or not he wanted to

protest against the improvement. It was competent
for the commissioners to determine the necessity for a
sewer in the district, and nothing in the statute in-
dicates that more than a general notice that an im-
provement is to be made is to be given to property
owners. The statute then applicable provided that
when the commissioners or council deem it to be neces-
sary they "shall by resolution declare such work or im-
provement necessary to be done, and such resolution
shall be published for six days in the official paper of
the city," etc. (Gen. Stat. 1909, § 1009), and it then
provides that if a majority of the resident owners
owning a majority in square feet of the property sub-
ject to taxation shall not within twenty days protest
the officers shall proceed to make the improvement. It
thus appears that the statute does not require that
plans and specifications shall have been filed at that
time nor that the character or cost of the sewer shall
be declared, and it can hardly be necessary to make the
resolution fuller or more definite than the statute it-
self. Under the same statute a resolution was passed
declaring that a pavement should be made within cer-
tain boundaries of a city and it was held to be sufficient.
There the character of the pavement or the cost of the
same was not declared and determined, and yet the
publication of that resolution was held to be sufficient
notice to property owners. (*Newman v. City of Em-
poria*, 32 Kan. 456, 4 Pac. 815.) In that case it was
held that the notice, general as it was, was sufficient
to invite opposition and protest. It related to pave-
ments instead of sewers, but there is nothing in the
statute which indicates that the notice for a sewer shall
be other or different from that required in case of a
pavement.

Some complaint is made of the sufficiency of the esti-
mate prepared by the city engineer but it appears to be
in substantial compliance with the law and the court
has expressly found that it was made in good faith.

Exception is taken to the method of apportioning the cost and it is argued that it should have been made in accordance with the plan prescribed in section 1177 of the General Statutes of 1909. As we have seen, the sewer was constructed under another section and it is therefore immaterial whether the plan in section 1177 differs from the one generally applied under the earlier act. The cost of the sewer has been apportioned upon a plan that has frequently been approved, that is, in proportion to the value of the lots taxed without the improvements thereon. (*Gilmore, County Clerk, v. Hentig,* 33 Kan. 156, 5 Pac. 781; *Mason v. Spencer, County Clerk,* 35 Kan. 512, 11 Pac. 402; *Kansas City v. Gibson,* 66 Kan. 501, 72 Pac. 222.)

Apart from these considerations it appears that the appellants did not seek to enjoin the making of the improvement or the levy of the assessment on their property until more than six months after the sewer proceedings were initiated nor until more than two months after the ordinance apportioning and levying the assessment was passed. It also appears that the improvement bonds, the issuance of which was sought to be enjoined, had been issued and sold and a part of the proceeds thereof expended before the appellants moved to obtain an injunction.

We think the court ruled correctly in refusing the injunction and its judgment will be affirmed.