No. 44,910

MINNIE E. MULLINS, JOHN R. ANDERSON, EDITH CAPITOLA ANDERSON, ROY A. PHILLIPS, JR., ETHELENE E. PHILLIPS, *et al.*, *Appellees,* v. THE CITY OF EL DORADO, KANSAS, a municipal corporation, *Appellant.*

(436 P. 2d 837)

Opinion filed January 27, 1968.

*M. F. Litras,* city attorney, and *R. C. Woodward,* of El Dorado, argued the cause, and *H. Pauline Woodward,* of El Dorado, was with them on the brief for the appellant.

*Ervin E. Grant* and *Robert M. Bond,* of El Dorado, argued the cause, and *L. J. Bond,* of El Dorado, was with them on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: This action was instituted by the owners of three tracts of land to enjoin the City of El Dorado from proceeding to levy and collect special assessments made against plaintiffs' properties for financing the construction of a sanitary sewer system. From a judgment of the lower court granting plaintiffs injunctive relief, the defendant city has appealed.

In May 1962, the plaintiffs, with the exception of Minnie E. Mullins, joined other landowners in petitioning the city governing body to provide their properties with sanitary sewers. Thereupon, the city, acting pursuant to K. S. A. 12-618 (now K. S. A. 1967 Supp. 12-618), created sewer districts 103, 106 and 107. The system was eventually constructed and completed at a total cost of $44,483.68. The trial court found the districts were legally created and that the city complied with all statutory requirements in constructing the sewers. The total assessable cost to each of the three districts was as follows:

| District | Taxing District Share | City at Large Share |
|---|---|---|
| 103 ....................... | $20,356.09 | $    0 |
| 106 ....................... | 13,055.92 | 0 |
| 107 ....................... | 5,061.73 | 6,009.94 |
| TOTALS | $38,473.74 | $6,009.94 |

The portion of the cost of sewer district 107 assessed to the city at large was for a pressure main and lift station, and is not a basis of complaint in this case. The cost attributable to each district was apportioned to the various parcels of land therein, and the alleged "unjust and excessive" amount of the special assessments made against plaintiffs' properties led to the filing of this action.

Plaintiffs' tracts of land varied in size and fronted on the north side of Sixth street within the city. The three sewer districts were contiguous to each other in an easterly-westerly direction along the north side of Sixth street. The depth of district 103 was 280 feet, and districts 106 and 107 were 348 feet deep. The sewer was constructed in an east-west direction on the approximate center line of each of the districts. The Mullins and Anderson tracts were located in district 103, and the Phillips tract lay in districts 106 and 107. In apportioning the costs of construction, the city appointed three appraisers to determine the value of properties within each district without regard to improvements thereon. The appraisers valued all the property fronting on Sixth street at $25 per front foot, and the city governing body assessed the costs of construction against the lands located in each district in proportion to the valuations fixed by the appraisers. Inasmuch as all property had been valued uniformly at $25 per front foot, this resulted in each tract bearing that proportion of the cost which its frontage bore to the entire frontage in the district. The special assessments against each of plaintiffs' tracts were as follows:

| Land Owner | District | Appraisers Valuation | Assessment |
|---|---|---|---|
| Mullins .......................... | 103 | $7,182.50 | $5,157.51 |
| Anderson ........................ | 103 | 7,420.00 | 5,328.05 |
| Phillips ........................ | 106 | 3,900.00 | 1,932.66 |
| Phillips .......................... | 107 | 3,900.00 | 1,250.60 |

In essence, the plaintiffs' petition alleged the special assessments against their individual tracts were excessive; that the actions of the defendant city, in determining the boundaries of the districts and apportioning the cost of the system, were arbitrary, capricious,

unreasonable, oppressive, unlawful, confiscatory and void; and that the levy and collection of said special assessments should be enjoined. A restraining order was issued against the defendant city temporarily enjoining it from collecting or attempting to collect any part of the special assessments against plaintiffs' property. However, we were told in oral argument that the city has proceeded to collect the assessments made against other tracts in each of the districts. The city filed a motion to dismiss plaintiffs' petition for the reason it failed to state a claim against the defendant upon which relief could be granted, which motion was overruled. The city then filed a lengthy answer in which it alleged, *inter alia,* that all of its actions were performed under the authority of, and in compliance with, the applicable statutes, and that it had in no way acted arbitrarily or capriciously.

After a full and complete hearing, the district court made findings of fact and conclusions of law. Summarily, those pertinent to this appeal were that three appraisers appraised the property located in the sewer district, without regard to the improvements thereon, at $25 per front foot for the real estate fronting on Sixth street, and at sixty-six and two-thirds per cent of that value for property not fronting on Sixth; that the appraisers gave no consideration to a pre-existing easement held by Cities Service Gas Company on the real estate belonging to the plaintiff Mullins in arriving at their valuation; that the appraisements were used by the city in making its special assessments against the lands in question; that the sewers were constructed using good engineering practice; that there was no person outside the said sewer districts being served by said sewers; that the market value of the plaintiffs' lands, without regard to the improvements thereon, was substantially less than the value affixed by the appraisers; *that the special assessments made against the property were greater than or substantially equivalent to the actual market value of the land and amounted to a confiscation of property without due process or adequate compensation;* and that the special assessments for the cost of constructing the sewers in districts 103, 106 and 107 against the property in said districts were unreasonable and oppressive.

The court concluded that the city should be permanently enjoined from making the special assessments against the plaintiffs' property; that the city at large should be required to absorb a much larger portion of the assessment; and that the reassessment

against the plaintiff property owners be done on an equitable and reasonable basis. Although the record fails to disclose any request being made of the court to order the benefit districts made larger, notation is made of the court's further conclusion, "Request to increase size of sewer district is denied."

Presumably, plaintiffs instituted this action pursuant to the provisions of K. S. A. 60-907(a), which provides:

"Injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same."

The sufficiency of plaintiffs' petition is not before us, inasmuch as defendant has not included as one of the points on appeal the trial court's order overruling defendant's motion to dismiss.

Taxation and assessment proceedings are fundamentally administrative or legislative in character and not judicial. Assuming that the petition states a claim upon which relief can be granted, the power of the courts under K. S. A. 60-907(a) to grant relief in matters of taxes and assessments imposed by the governing body of a municipality is confined to those situations where the action taken by the governing body is without authority, or permeated with fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud. (*Mobil Oil Corporation v. McHenry*, 200 Kan. 211, 436 P. 2d 982.)

In our recent decision of *Schulenberg v. City of Reading*, 196 Kan. 43, 410 P. 2d 324, which was an action under K. S. A. 60-907 to enjoin the collection of special assessments made by the city acting under K. S. A. 12-618 for financing the construction of a sewer system, we said:

". . . the power to create sewer districts and make property liable for special assessments is to be found in the statute. (*State Highway Commission v. City of Topeka*, 193 Kan. 335, 393 P. 2d 1008.) The power of the city governing body is legislative, and discretionary in the legal sense. Courts have no supervisory power over the policy of municipal legislation and are not permitted to substitute their judgment for that of the governing body of the city. This is a fundamental principle of municipal law, and particularly in matters with respect to the law of taxation. Courts can only interfere to curb action which is *ultra vires* because of some constitutional impediment, or lack of valid legislative authority, or unlawful acts under a valid statute, or because action under a valid statute is so arbitrary, capricious, unreasonable and subversive of private rights as to indicate a clear abuse rather than

a *bona fide* exercise of power. The rule is stated in *Drainage District v. Drainage District,* 104 Kan. 233, 178 Pac. 433, where it was said:

"'. . . The directors of the district being invested with the discretion, judgment and authority as to the best means of accomplishing the purpose, may exercise such discretion, judgment and authority without interference or control by the courts, unless bad faith or fraud enters into their action. (*City of Emporia v. Railway Co.,* 88 Kan. 611, 129 Pac. 161; *Marts v. Freeman,* 91 Kan. 106, 136 Pac. 943; *Photo Play Corporation v. Board of Review,* 102 Kan. 356, 169 Pac. 1134) . . .' (1. c. 235.)

"*It is more specifically stated in Symns v. Graves, 65 Kan. 628, 70 Pac. 591, where it was said:*

"'But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity. . . .' (1. c. 636.)

See, also, *Root v. City of Topeka,* 104 Kan. 668, 180 Pac. 229; *City of Emporia v. Humphrey,* 132 Kan. 682, 297 Pac. 712, and *Timmons, Administrator v. McGaughey,* 193 Kan. 171, Syl. ¶ 2, 392 P. 2d 835." (pp. 52, 53.)

The foundation of the power to make a special assessment for a local improvement of any character, including the construction of a sanitary sewer system, is that the property against which the assessment is levied derives some special benefit from the improvement. A special assessment, therefore, is in the nature of a tax levied against property according to the benefits conferred. While the property is made to bear the cost of the improvement, it or its owner suffers no pecuniary loss thereby since, theoretically at least, the property is increased in value by an amount equal to the tax levied against it. (*State Highway Commission v. City of Topeka,* supra.)

The whole theory of special assessments is demonstrated by the language found in the early and oft cited case of *Norwood v. Baker,* 172 U. S. 269, 43 L. Ed. 443, 19 S. Ct. 187:

". . . the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. . . .

". . . the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material

character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment." (pp. 278, 279.)

The inability to always balance with exactitude the assessment with the benefits was further recognized by Mr. Justice Holmes, speaking for the majority of the court in *L. & N. R. R. Co. v. Barber Asphalt Co.*, 197 U. S. 430, 49 L. Ed. 819, 25 S. Ct. 466:

". . . There is a look of logic when it is said that special assessments are founded on special benefits and that a law which makes it possible to assess beyond the amount of the special benefit attempts to rise above its source. But that mode of argument assumes an exactness in the premises which does not exist. The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate. In its general aspects at least it is peculiarly a thing to be decided by those who make the law. . . ." (p. 433.)

Ordinarily, the question of the existence and extent of special benefits resulting from a public improvement for which a special assessment is made is a question of fact to be determined by the governing body authorized to act in the premises, and is considered conclusive on the property owners and the courts. Inherent in this rule, however, is the requirement that an assessment so made be fair, just and equitable. Only if palpable injustice results in applying the method of apportionment and assessment so that the burden imposed is entirely disproportionate to benefits received, will courts, under their equity power, grant relief. (*Schulenberg v. City of Reading,* supra; *Hurley v. Board of County Commissioners,* 188 Kan. 60, 360 P. 2d 1110; 14 McQuillin, Municipal Corporations § 38.124; 48 Am. Jur., Special or Local Assessments § 29.) The action of municipal authorities in making a special assessment is presumed to be legal, equitable and just, and the assessment is prima facie evidence of the regularity and correctness of all prior proceedings. (14 McQuillin, Municipal Corporations § 38.183, and cases cited in footnote 27. Also, see, *Grecian v. Hill City,* 123 Kan. 542, 256 Pac. 163.) Thus, in establishing grounds justifying intercession by the courts, a property owner has the burden of proof. (See *Kindley v. Rogers,* 85 Kan. 645, 118 Pac. 1037; *Coates v. Nugent,* 76 Kan. 556, 92 Pac. 597; *City of Argentine v. Simmons,* 54 Kan. 699, 39 Pac. 181; 48 Am. Jur., Special or Local Assessments § 57.)

Turning to the crucial points of this appeal, we find the defendant city contending that the method used in allocating the cost of the sewer system was fair and reasonable. It asserts that the appraisers acted only in an advisory capacity, and that costs were apportioned

upon a plan expressly approved by this court, that is, in proportion to the value of the lots taxed without improvements thereon. The point is well taken.

K. S. A. 12-618 provides in part:

"The costs and expenses of constructing or purchasing the said pumping stations, sewers and drains, . . . shall be assessed against the lots and pieces of ground contained within the district in which the same is situated, and shall be levied and collected as one tax, in addition to the other taxes and assessments, . . ."

The statute makes no requirement for the appointment of appraisers, yet there is precedent for such procedure. ( See, *St. Louis-S. F. Rly. Co. v. City of Pleasanton,* 121 Kan. 559, 247 Pac. 447.) Neither does the statute prescribe a specific method for apportioning costs. Where such is the case, the municipality may adopt any plan that is fair and equitable and such that will bring about an assessment in proportion to the benefits accruing. ( *Schulenberg v. City of Reading,* supra. ) In the early case of *Gilmore, County Clerk v. Hentig,* 33 Kan. [2d Ed.] 156, 5 Pac. 781, it was stated:

". . . The taxes were in fact levied in proportion to the value of the lots taxed, without the improvements thereon. Now as the statute [authorizing construction of sewers] does not prescribe any mode for the apportionment of the taxes, we would think the city would have a right to adopt any mode that was fair and legal; and we would also think that the mode adopted by the city was fair and legal. Of course it might in particular instances work injustice or hardship, and not be legal or valid; and in all probability there are such instances in the present case; but, looking at it as a mere rule of apportionment, we think it is valid. . . ." (pp. 173, 174.)

A similar plan of apportionment was also approved in *Ransom v. Minnick,* 92 Kan. 953, 142 Pac. 934. Thus, the assessment of costs in proportion to the value of the properties without improvements thereon is a proper method of apportionment under K. S. A. 12-618 (now K. S. A. 1967 Supp. 12-618) as long as the burden imposed on each of the tracts is not entirely disproportionate to benefits accruing thereto.

The defendant city admits that the market value of the tracts was less than that fixed by the appraisers; however, it aptly points out that the result would be the same regardless of the valuations determined if the frontage values were uniform for all properties. That is, each tract would bear a portion of the costs in relation to its frontage with the total frontage in the district.

The city also concedes the correctness of the lower court's finding that the special assessments made against the properties involved

were greater than or substantially equivalent to their actual market value, but urges that this fact alone does not compel a conclusion that the assessments were confiscatory, unreasonable and oppressive. We are inclined to agree. In *Buckwalter v. Henrion*, 111 Kan. 781, 208 Pac. 645, certain lots belonging to the plaintiffs were subjected to special assessments for street improvements which aggregated more than the market value of the property. In holding there was no confiscation or breach of constitutional law, this court stated:

". . . But while such a result is to be avoided by city officials wherever possible, and if such result can be traced to their willful injustice, oppression, or sheer disregard of property rights, the strong hand of a court of equity would promptly reach out and set it at naught, and do it, too, with more concern for righteousness than for logic [citing *Norwood v. Baker*, supra] . . . yet where the special assessments are fairly made, and made according to equitable principles, and pursuant to statutory authority, the fact that the proportionate cost of the improvement is greater than the property will readily sell for on the current market does not make a case for the interference of a court of equity. [*Citing L. & N. R. R. Co. v. Barber Asphalt Co.*, supra.]" (p. 785.)

Also, see 14 McQuillin, Municipal Corporations, § 38.183.

In support of the trial court's findings and conclusions that the assessments were confiscatory, unreasonable and oppressive, the plaintiffs strongly urge that the city governing body, in making the assessments on a uniform front-foot-valuation basis, disregarded the special benefit of the sewer to each tract, the size of the tract and its particular use. Defendant city argues there was no discrimination in assessing the tracts, that the tracts within the districts were of uniform depth and were equally benefited. The only property that merits attention on this point is that of Mrs. Mullins. She testified her tract consisted of 240 feet frontage on Sixth street with a north-south depth of 318 feet, that the Cities Service Company had an easement across the entire south frontage, that there was a fenced area for a pressure station consisting of 100 feet east and west by 50 feet in depth, and that the remaining frontage of 142 feet consisted of a pipeline easement 33 feet in depth. The record is silent about the exact terms or duration of the easement, and we are not told just how the use of the property is affected, except for the fenced portion. One of the three appraisers testified that they saw the area on which the pressure station was located; that the particular area could not be utilized as far as frontage was concerned; but in considering the manner and method in which driveways and approaches were used, they assumed this could be worked around

and would have no appreciable effect on the ground whatever, and they appraised it as having none. The appraisers apparently gave little or no consideration to the easement in making their appraisal of the property. It would appear the entire Mullins tract located in the sewer district was subject to being served by the sewer without regard to the burden of the easement.

Mrs. Mullins' home, a tavern and two outbuildings were located on her tract. On the Anderson land was a home and a tin structure mounted on legs for the purpose of loading oil compound. The Phillips tract had a home and "rental property" on it. The use being made of other properties lying within the sewer districts is not clear from the record. Property to the north of that involved here lay along a railroad track, and there was some evidence the property located within the sewer districts "was owned primarily for industrial purposes and as such could be used for almost any purpose."

It is a matter of common knowledge that a sewer system ordinarily enhances the value of the property it is designed to serve. Additionally, in many instances the installation of a sewer greatens the opportunity for development of the property into a higher and better use. While present use may properly be considered in determining benefits, it is not controlling. The property must be considered in its general relation to other properties in the assessment district regardless of present use. The benefit from the improvement is presumed to inure to the property itself rather than to the particular use being made of it at the time. (48 Am. Jur., Special or Local Assessments § 23.) Thus, the test is not whether the property is enhanced in value for the particular purpose to which it is devoted at the time of assessment but whether it is enhanced in value for any purpose. (See, *Village of Edina v. Joseph,* 264 Minn. 84, 119 N. W. 2d 809.)

In light of the foregoing discussion, we are of the opinion the easement did not substantially affect the value or use of the Mullins property to such an extent that it did not receive the same benefits from the construction of the sewer as other properties in the districts.

To support their position that the uniform front-foot-valuation basis ignored the size of each tract, the plaintiffs cite *Weed v. Boston,* 172 Mass. 28, 51 N. E. 204. We have examined the decision and find it is not particularly helpful to plaintiffs' cause. There, a

statute provided that the expense of constructing a sewer, in an amount not exceeding four dollars per lineal foot of sewer, was assessable to adjacent lands according to the frontage on the sewer. The court held that inasmuch as lots adjacent to the sewer constructed on a strip of private land taken for the purpose may vary greatly in size or depth and value per foot and may be inadequate to bear the burden of assessment, the method of assessment was unreasonable and disproportionate and, thus, the statute in such respect was unconstitutional. Notwithstanding its ultimate holding, the court observed:

" '. . . As in other local assessments, so in the case of sewers, the correct principle is that the assessment upon each parcel of contributing property shall be according to the special benefits which the particular parcel receives. Benefit, actual and probable, is the only foundation upon which an assessment can lawfully rest. The Legislature has, within legislative limits, a discretion in providing the mode of ascertaining the benefits; but even in the absence of express constitutional restriction, its power is not unlimited. This ascertainment may be made, and usually is, by a separate and actual estimate of special benefits. But where the lots in a town or city are small, of the same depth, and similarly situated, an assessment, under the conditions mentioned in a previous section, may be authorized on the basis of frontage, which is a convenient substitute for an actual estimate; but this mode cannot be authorized where it must inevitably operate with manifest inequality, as will often be the case with rural or suburban property, or where from the circumstances it is clear that it is legally impossible that an apportionment of the cost on this basis can be just or equal, or approximately so, and where injustice must certainly result from this adoption,' etc. . . ." [2 Dill. Mun. Corp. (4th Ed.) § 809.] (p. 32.)

The statute in the *Weed* case required the assessment of costs on a frontage basis in all instances, whereas here we are called on to consider only whether under the facts a frontage basis of apportionment was palpably inequitable and unreasonable. True, the entire tracts of land owned by plaintiffs varied in size, particularly depth, but the depths of those portions within the sewer districts were substantially the same—280 feet for district 103, and 348 feet for districts 106 and 107. Admittedly, there was evidence on behalf of the plaintiffs that the value of their individual tracts, when considered in their entirety, differed greatly. There was no evidence, however, that those portions of the tracts lying within the districts were other than comparable in value. One of the sewer district appraisers testified, "We developed a front foot valuation for this ground as it was *all* fairly comparable." (Emphasis added.) We further note that all properties fronting on Sixth street were

reappraised for ad valorem tax purposes in 1964 at $20 per front foot, irrespective of their differences in depth.

The law does not require that a special assessment correspond exactly with the benefits received. Seldom can precise mathematical accuracy be obtained. The most that can be expected of a governing body, such as the defendant city, is to estimate the benefits to each tract of land upon as uniform plan as possible so that the assessment against a particular piece of property is substantially proportionate to the benefits received. We have carefully examined the entire record and have concluded that the plaintiffs failed to sustain the burden of showing that the application of a uniform front-foot-valuation formula in apportioning costs has led to assessments that are entirely disproportionate to the benefits received by their individual properties.

Although the injunction granted by the district court appears to have been predicated solely on its conclusion the assessments were confiscatory, the plaintiffs also contend they were entitled to the relief granted because the action of the governing body, in determining the size of the sewer districts, resulted in unreasonable and oppressive assessments against the property. They maintain the system was capable of handling sewerage from other areas or districts, and the cost of the system was relatively large; therefore, it should have been considered as a main sewer, in which case a substantial portion of the cost could have been paid by the city at large, pursuant to K. S. A. 12-619 (now K. S. A. 1967 Supp. 12-619). In support of their contentions the plaintiffs offered evidence by Don Moehring, Sr. and Don Moehring, Jr., consulting engineers. Summarily, these experts testified that the size of the line was sufficient for service as a main and, because of its location and depth, should have been considered as a main or submain to serve an area outside the present district, particularly to the north and west. Also, in their opinions, if the system were designed to serve only the area included in the present districts, the line should have been laid at a more shallow depth and sewerage pumped from basements with a small pump, rather than go to the expense of extensive rock excavation. The city engineer, on the other hand, testified that he designed the system and recommended the size of the districts. Eight-inch lines, which are the minimum size normally approved by the State Board of Health, were used in constructing the system. The sewer was designed as a lateral system to serve only the prop-

erty in the districts. The line was laid ten to eleven feet in depth in order to accommodate homes with basements. Construction costs were unusually high because a great amount of rock was encountered. While it was acknowledged the lines were of sufficient capacity to serve other areas outside the district, the city engineer testified that as future development took place in those areas, they would be served by main sewers from other directions rather than the system in question.

We are told that the district court refused to make a specific finding that the system was either a main or lateral. Nevertheless, the court specifically found that the sewers were constructed using good engineering practice and that there were no persons outside the districts who were being served by the sewers. Throughout all the proceedings the city proceeded on the theory the sewer was a lateral system except as to that portion designated as a pressure main and lift station. The size of the districts and whether the system was to be a main or lateral were engineering problems to be dealt with and finally determined by the city fathers who were charged with the duty of adopting a suitable plan to serve the tracts of land involved. The adoption of an appropriate plan in accordance with applicable statutory authority conferred by the legislature called for the exercise of discretion and judgment by the municipal authorities, whose decision, rendered in good faith, free from fraud, must be regarded as final and not subject to review by the courts. (*Gardner v. City of Leavenworth,* 100 Kan. 351, 164 Pac. 182; *Coates v. Nugent,* supra. Also, see, *City of Atchison v. Price,* 45 Kan. 296, 25 Pac. 605.) From the record we are unable to find any grounds which, under the authorities cited, justify disturbing the determination made by the city as to the size of the districts and the assessment of costs to the properties in the districts on the basis of a lateral system.

The majority of this court has concluded that plaintiffs failed to make out a case entitling them to injunctive relief. Other points raised by the defendant city, therefore, become immaterial.

The judgment of the district court is reversed.

FONTRON, J., dissents.

FATZER, J., concurring in part and dissenting in part: I concur in this court's judgment of reversal, but I must respectfully dissent

from the judgment denying the plaintiffs injunctive relief. I would direct the district court to make additional findings. It is manifest from the judgment rendered below that the district court was of the opinion the plaintiffs should be given some relief from the onerous assesments. Inherent in the judgment is the implied finding the system installed was a main sewer since the court ordered the city at large to absorb a much larger portion of the assessments. For the city at large to be assessed a substantial portion of the cost of the system in accordance with the judgment, the district court would have been required to find the system was a main sewer. (K. S. A. 1967 Supp. 12-619.) Despite the fact both parties requested the court to make a specific finding whether the system was main or lateral—the city in its requested findings that the sewers were all lateral, and the plaintiffs in their motion for additional findings that the system was a main sewer—the court refused to specifically find either way, and denied both motions. The evidence on the point was highly conflicting and until a specific finding is made, it is my judgment the case is not ripe for decision, and this court may not assume the sewers installed were all "lateral."

In addition, I would further direct the district court to determine the terms and duration of the Cities Service easement on the Mullins' property. A city appraiser testified positively that, "In valuing the land, I would have taken into consideration how the easement affected the ground, whether it could be crossed and whether the front footage could be used and whether this would entirely block the use of the ground . . . If there was 100 feet under the fence, it could affect the value . . ." The parties stipulated that 100 feet east and west on the Mullins' land was fenced under the easement. In my judgment, the district court should hear further evidence on this point and if the easement is of a permanent nature, it should determine the value and reassess the property.