No. 45,661

ELLA STRICKLAND, et al., *Appellants*, v. CITY OF WICHITA, et al., *Appellees*.

MINNIE SCHRAMM, *Appellant*, v. CITY OF WICHITA, et al., *Appellees*.

(457 P. 2d 162)

Opinion filed July 17, 1969.

*Grey Dresie*, of Wichita, argued the cause and was on the brief for the appellants.

*Eugene L. Pirtle*, First Assistant City Attorney, argued the cause, and *John Dekker*, City Attorney, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, C. J.: These actions—consolidated in the court below—were to enjoin the City of Wichita from levying and collecting special asessments against lands owned by plaintiffs—such assessments arising out of the construction of a sewer.

Judgment was for defendant city, and plaintiff landowners have appealed.

No procedural problems are involved. As we view the case the basic question concerns the factors (or lack thereof) taken into consideration by the city-appointed appraisers in fixing the values of plaintiffs' lands.

The applicable statute (K. S. A. 12-608) under which the city proceeded, reads in part—

"As soon as the cost of such improvement is determined, the governing body shall determine and assess to each lot or parcel of ground liable for such special assessment the amount to be paid thereon, which amount shall be determined

by the assessed value of the lots and pieces of land without regard to the buildings or improvements thereon, which value shall be ascertained by three disinterested appraisers appointed by the mayor and confirmed by the council or commission."

Plaintiff Strickland owned a tract of 58 acres of farm land in the area involved. For general tax purposes it was valued at approximately $12,000.00, and was used exclusively for farming purposes. Its actual value was about $600.00 per acre. The city appraisers valued it at $209,065.00—which resulted in a special assessment of $49,033.48.

Plaintiff Schramm owned a tract of 57 acres of farm land in the area involved. For general tax purposes it was valued at approximately $11,000.00, and was used exclusively for farming purposes. Its actual value was about $600.00 per acre. The city appraisers valued it at $224,630.00—which resulted in a special asessment of $52,686.20.

All of the lands in the large area involved had been zoned—ranging from "AA Single Family" to "F Heavy Industrial".

Plaintiffs' tracts, together with a number of others—were included in the portion zoned "heavy industrial".

As will be shown later, the appraisers applied a per square foot price based on zoning.

Plaintiffs then brought these actions—contending the appraisal so based was incorrect and unrealistic, that it was made without regard to the value of their lands as compared to adjacent lands within the same zoning, and that such appraisal—based solely upon mathematical computation—resulted in an unreasonable, arbitrary and grossly excessive assessment—all of which entitled them to injunctive relief.

The pretrial order—among other matters—included the following question for determination:

"2. (b) Is appraisement based upon zoning a proper measure for assessment without regard to land use?"

There was no material dispute in the evidence relating to actual land values. As earlier stated—the underlying question concerns the factors—or lack of them—taken into consideration by the appraisers in fixing values for purposes of the special assessment.

The method and procedure used by the appraisers can best be shown by quoting portions of the testimony—on both direct and

cross-examination—of the witness Arnold (one of the appraisers) as abstracted in the Record on Appeal:

". . . He further testified that in making appraisals, he usually took into consideration location, topography and environment, trafficways, streets and the foregoing covered the matters considered in this type of appraisal because this type of appraisal excluded any type of improvement. That in this type of appraisal they were trying to equalize land values by zoning classifications; that they were not trying to determine a fair market value or a market value of the property or any specific property within the benefit district; that the figure used was an arbitrary figure used in trying to equalize the value.

"The witness testified that each piece of property was figured for square footage by the City Engineer and that the figures were accepted as correct by the appraisers. He further testified that the panel of appraisers applied a per square foot price based on zoning to the square footage in the various plots, tracts of land and railroad property; that they arrived at the figure to be applied to each zoning so as to get uniformity, to arrive at a uniform value and that they applied in each zone a definite per square foot value; that this was done in the whole benefit district and that the whole purpose of their appraisal was to be sure that each piece of property in a particular type of zoning paid the same per square foot value as did all the other property in that particular type of zoning. The witness stated that it was his opinion, as an appraiser, that the whole area zoned "heavy industrial" was not too remote to be developed in the foreseeable future. That they, the appraisers took location of property into consideration but that they still applied the same per square footage price to all of the property in a particular zone in spite of differences of location.

"The witness testified that he had never read K. S. A. 12-608 under which he was appointed and acted and that nobody had pointed out his duties under that statute, that his impression was that they were to arrive at an equitable value of the property assigned to them according to zoning and classifications and the highest, best use. The value arrived at was for uniformity in establishing evaluation.

"That his idea was that they were to arrive at a value without reference to improvements; that it was not a fair market value but a value that the appraisers to arrive at to equalize the value according to zoning classifications; that when they zoned the property, the fifty acres, belonging to one of these plaintiffs at $200,000 that they did not intend that they thought the property was worth $200,000; that the figures could be anything just so we get proportion of the zoning; that the word "value" meant nothing; that it was merely part of a mathematical formula that they were working out.

". . . that uniformity is what they were seeking to achieve and that in the witness' opinion and judgment as an appraiser, considering the multitude and varieties of environmental factors that zoning was as even a measure as they could devise to relate to land values.

"The witness testified on re-direct examination that it did not matter what figures were used as long as they were uniform in proportion to the zoning classifications; . . . . ."

There was evidence that land owned by two existing heavy industrial users was worth $1,500.00 and $3,500.00 per acre.

The formula adopted by the appraisers and applied to the entire area, was as follows:

| | Valuation per front foot based on depth of 150 feet | Valuation per Square foot |
|---|---|---|
| "AA" Zoning (Single Family) | $6.00 | $0.04 |
| "A" Zoning (Two-Family Dwellings) | 6.00 | .04 |
| "RB" Zoning (Four-Family Dwellings) | 8.00 | .0533 |
| "B" Zoning (Multiple-Family Dwellings) | 15.00 | .10 |
| "BB" Zoning (Offices) | 20.00 | .1333 |
| "LC" Zoning (Light Commercial) | 25.00 | .1667 |
| "C" Zoning (Commercial) | 50.00 | .3333 |
| "D" Zoning (Central Business District) | Variable | |
| "E" Zoning (Light Industrial) | 15.00 | .10 |
| "F" Zoning (Heavy Industrial) | 15.00 | .10 |

In its findings of fact the court found the values and assessments placed on plaintiffs' lands to be as related earlier in this opinion.

The court further found that the use of zoning as a measure of value was utilized by the appraisers to equalize values, and that the value of each parcel was determined according to zoning and the rate was applied and values were determined according to the square footage contained in each such parcel, and that thereafter the total costs were used as a basis of arriving at a factor, and from this factor the square footage in each parcel was assessed its proportionate share of the cost of construction.

The court's conclusions of law were for the most part general statements of law pertaining to the levy of special assessments, the presumptions of validity surrounding such proceedings, and the power of courts to interfere with the administrative process—concerning which no complaint is made.

In addition, the court held—

"Tenth: Zoning is a reasonable classification upon which to project land values and assess benefits to individual property owners."

Injunctive relief was denied and judgment entered for the city. This appeal followed.

Although the brief of plaintiffs contains numerous statements

of points—their contentions actually narrow down to the one main point—that the "appraisal" was based *solely on zoning* without regard to actual land values—all of which resulted in such an unjust and arbitrary assessment as to entitle them to injunctive relief.

The statute (K. S. A. 12-608) provides that the values are to be determined without regard to the buildings or improvements—and it appears the appraisers followed that mandate. Concededly, zoning is a factor to be considered in arriving at value in a matter of this kind—but it is not the only one. The evidence is undisputed that other lands in the same zoning were worth $1,500.00 and $3,500.00 per acre, and yet those lands were valued by the appraisers on the same square-footage basis as the lands of plaintiffs —which, under the evidence, were worth approximately $600.00 per acre.

The case of *Mullins v. City of El Dorado*, 200 Kan. 336, 436 P. 2d 837, is relied on by the city in support of the judgment. We believe the general statements of law contained in the syllabus of that case are correct—and that under the facts of that case were correctly applied. It is to be borne in mind, however, that in the *Mullins* case the appraisers did not arrive at values based solely on zoning—as was done here. There is another distinguishing feature —and we quote from page 346 of the opinion—

"There was no evidence, however, that those portions of the tracts lying within the districts were other than comparable in value. One of the sewer district appraisers testified, 'We developed a front foot valuation for this ground as it was *all* fairly comparable.' "

To sum up—while it appears the appraisers here gave "lip service" to other factors such as location, topography and the like— it is clear they ended up by basing values solely on zoning— the end result being to saddle plaintiffs' lands with an unreasonable and arbitrary assessment. For this reason we believe the trial court erred in denying injunctive relief.

The judgment is reversed.

FONTRON, J., concurring: While I concur in the disposition of the appeal and agree with the legal principles stated and applied, I am unable to assent to any blanket endorsement of the result reached in *Mullins v. City of El Dorado*, 200 Kan. 336, 436 P. 2d 837, in which I dissented without opinion. Now, as then, lack of time precludes elaboration.