No. 46,474

West Elk Unified School District No. 282, Elk County, State of Kansas, *Appellant*, v. City of Grenola, Elk County, Kansas, *Appellee*.

(507 P. 2d 835)

Opinion filed March 3, 1973.

*Lynn L. Perkins*, of Howard, and *Elvin D. Perkins*, of Emporia, argued the cause, and *Donald D. DeWitt*, of Emporia was with them on the brief for appellant.

*David A. Brace*, of Moline, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This action was instituted by West Elk Unified School District No. 282, Elk County, against the city of Grenola, seeking to have Ordinance No. 928-S, relating to sewer service charges, declared void as being an arbitrary, capricious, and unlawful usurpation of the legislative power of the municipality. The school district alleged the ordinance in question was discriminatory in its application to it, and requested relief in the form of an injunction to prohibit enforcement of special assessments provided therein.

Ordinance No. 928-S was passed and approved by the governing body on or about February 4, 1969, and published in the official city newspaper on February 13, 1969, thereby placing the ordinance into effect. The ordinance established classifications of users of the sewer system and imposed a service charge based upon structured rates directly related to the classification in which the user was categorized. Pertinent portions of the ordinance follow:

"Section 2. All users of the sewage system, within the corporate limits of the city, are for the purposes of this ordinance classified as follows:

"A. Residential: Residential shall mean any structure housing one or two families and also shall include churches, commercial establishments having fewer than 5 employees and industrial establishments having fewer than 5 employees.

"B. Educational: Educational shall mean any structure capable of housing 10 or more students, teachers and administrative personnel.

"D. Commercial and Industrial: Commercial and Industrial shall mean any structure housing a commercial or industrial use and having 5 or more employees or using 10,000 gallons or more of water per month.

"Section 3. From and after the effective date of this ordinance and beginning February 4, 1969, there is hereby levied on each sewer system user having a sewer connection with the sewerage system of the City of Grenola or otherwise discharging sewage, industrial waste, water or other liquids either directly or indirectly into the city's sewerage system a sewer service charge. Such charge, based upon the classifications set forth in Section 2 hereof shall be as follows: Single Family $4.00 per month—Two Family 6.00 per month—Educational $125.00 per month—Commercial and Industrial $4.00 per month Over 5 employees or using 10,000 gal. or more per month $10.00 per month."

The case was tried to the district court on November 25, 1969, and in a memorandum opinion dated June 8, 1970, judgment was entered in favor of the defendant city. After making necessary findings of fact, the district court concluded:

"*The apparent issue in the case is whether the service charge assessed against the plaintiff school board is so palpably unreasonable, unjust, arbitrary, capricious, unlawful or discriminatory as to render the service charge assessment void.*

"Initial reaction to a charge of $125.00 per month for sewer service for the school is that it is quite high. Further consideration of the charge tends to palliate such impression, however. A sewer system costing $173,389 for a community of 360 persons necessitates a charge for its users that would seem quite high to those living in many other communities. The charge per connection for users other than the school seems high, also.

"The court must keep in mind the rule set forth in Syllabus No. 3 in *Mullins v. City of El Dorado*, 200 Kan. 336: 'Ordinarily, the question of the existence and extent of special benefits resulting from a public improvement for which a special assessment is made is a question of fact to be determined by the governing body authorized to act in the premises, and is considered conclusive on the property owners and the courts. Inherent in this rule is the requirement that an assessment so made be fair, just and equitable. Only if palpable injustice results in applying the method of apportionment and assessment so that the burden imposed is entirely disproportionate to benefits received, will courts, under their equity power, intercede.' In the present case the rule would seem to apply to the service charge made. We are not informed, on the one hand, as to the additional cost to the city resulting from the projected use of the sewer by the plaintiff, nor, on the other hand, as to

the cost which plaintiff would have been required to expend to properly dispose of its sewage separate from the city. *In view of the evidence adduced I feel unable to say that the method used by Defendant to apportion the charges necessary to defray the expenses of the sewer system was unfair, unjust, or inequitable. This court must not substitute its judgment for that of the governing body of the city.*" (Emphasis supplied.)

On appeal, the school district contends the district court erred in holding it had failed in its burden of proof, and renews its contention the ordinance in question is arbitrary, capricious, discriminatory, and unlawful.

The school district asserts the city failed to follow the directive of K. S. A. 12-860. That section reads in part:

"The governing body shall establish such rates and charges for water and for the use of the sewage disposal system as shall be reasonable and sufficient to pay the cost of operation, repairs, maintenance, extension and enlargement of the water and sewage system and improvements thereof and new construction and the payment of revenue bonds and the interest thereon as may be issued for such water and sewage system . . ."

The argument is premised upon an allegation the city gave no notice to the school district before the ordinance was enacted. The school district claims that had notice been given, it would have offered evidence relating to fair and reasonable classifications "sufficient to pay the costs of operation, repair, maintenance, extension and enlargement of the . . . improvements . . ." The point is not well taken. This court does not find a notice requirement incorporated in the statute. Moreover, the record indicates the city officials had discussed the sewer service charges with the school district on several occasions, and on other occasions the city officials had attempted to negotiate a reasonable rate with the school district. That testimony, if believed by the district court, would have been sufficient to support a conclusion the school district was notified and aware of the future enactment of the challenged ordinance. As notice is supported by the record, the school district's first contention is without merit.

The school district next contends the rates established under the classifications included within the challenged ordinance were tantamount to constructive fraud, asserting the classifications were unreasonable, arbitrary, and capricious.

In determining whether the special assessments charged to the school district were reasonable so as to secure judicial approval, this court is guided by the rule stated in *Mullins v. City of El Dorado,* 200 Kan. 336, 436 P. 2d 837, where it was said:

"Ordinarily, the question of the existence and extent of special benefits resulting from a public improvement for which a special assessment is made is a question of fact to be determined by the governing body authorized to act in the premises, and is considered conclusive on the property owners and the courts. Inherent in this rule, however, is the requirement that an assessment so made be fair, just and equitable. Only if palpable injustice results in applying the method of apportionment and assessment so that the burden imposed is entirely disproportionate to benefits received, will courts, under their equity power, grant relief. (*Schulenberg v. City of Reading,* supra; *Hurley v. Board of County Commissioners,* 188 Kan. 60, 360 P. 2d 1110; 14 McQuillin, Municipal Corporations § 38.124; 48 Am. Jur., Special or Local Assessments § 29.) The action of municipal authorities in making a special assessment is presumed to be legal, equitable and just, and the assessment is prima facie evidence of the regularity and correctness of all prior proceedings. (14 McQuillin, Municipal Corporations § 38.183, and cases cited in footnote 27. Also, see, *Grecian v. Hill City,* 123 Kan. 542, 256 Pac. 163.) Thus, in establishing grounds justifying intercession by the courts, a property owner has the burden of proof. (See *Kindley v. Rogers,* 85 Kan. 645, 118 Pac. 1037; *Coates v. Nugent,* 76 Kan. 556, 92 Pac. 597; *City of Argentine v. Simmons,* 54 Kan. 699, 39 Pac. 181; 48 Am. Jur., Special or Local Assessments § 57.)" (l. c. 342.)

While neither cited nor briefed by the parties, this court has held in *Usher v. City of Pittsburg,* 196 Kan. 86, 410 P. 2d 419, that a municipality operating a water plant and serving customers outside the city limits had authority to make separate classifications of users for rate making purposes, and in arriving at a rate schedule, it need not make a complete investigation of rates within the city. In addition, the fact that rates are different is not sufficient to destroy the presumption the rates are reasonable and warrant a conclusion the classifications are discriminatory. In *Usher* it was held a rate schedule based upon allocation of investment and charges to customers outside the city, but which was not based upon a detailed study of the entire system, was adequate and reasonable.

A. E. Reiss, the city engineer, testified the rate schedule was based upon population, number of sewer connections, the costs of principal and interest on general obligation and revenue bonds sold to finance the system, and the number of students and teachers who would normally be using the facilities at the school. He further testified the residential rate of $4, based upon the existing information of 190 connections and 360 population, would equate to a charge of approximately $2.10 per person. When the rate applied to the school district was divided by the estimated school population, the rate equated to a charge of $1.04 per person. Reiss' testimony, if believed by the district court, would be sufficient

evidence to conclude the rate schedule was fair and equitable. We think the school district may not assert that a rate base which favors it per capita, could be the standard upon which an allegation of discrimination could be sustained.

The arguments of the school district are analogous to those raised in *Usher*. Other jurisdictions have considered the merits of such contentions, and we have carefully considered those authorities cited by both parties. For those who may be interested in additional review of case law on the subject, see *Bloomsburg M. A. v. Bloomsburg C. Can.*, 203 Pa. Superior Ct., 393, 199 A. 2d 502 (classification based upon metered water), and *Hickory Twp. v. Brockway et al., Aplnts,* 201 Pa. Superior Ct. 260, 192 A. 2d 231 (classification and rate based upon number of receptacles). It is sufficient to say the burden was upon the school district to establish palpable injustice in the apportionment and assessment of the sewer charges in question. There was ample evidence to support the finding of the district court that the school district failed in its burden of proof, and this court concludes the ordinance was reasonable and equitable under the facts and circumstances.

The judgment is affirmed.