(636 P.2d 192)

No. 52,485

CITY OF STRONG, *Appellant,* v. RURAL WATER DISTRICT NO. 1, CHASE COUNTY, KANSAS, *Appellee.*

Opinion filed November 19, 1981.

*William Hergenreter,* of Shaw, Hergenreter, Quarnstrom & Wright, of Topeka, and *Charles R. Rayl,* of Cottonwood Falls, for the appellant.

*D. W. Wheeler,* of Wheeler & Wheeler, of Marion, for the appellee.

Before JUSTICE HERD, presiding, SWINEHART, J., and LEWIS L. McLAUGHLIN, District Judge Retired, assigned.

McLAUGHLIN, J.: This is an appeal by plaintiff City of Strong from the trial court's order dismissing the action without prejudice upon defendant's motion at the close of plaintiff's case. The case involved a dispute as to water rates. Plaintiff is a municipal corporation and defendant is a Rural Water District.

On October 22, 1973, the parties executed a water purchase contract providing for the sale of water by plaintiff to defendant at the rate of $ .60 per 1,000 gallons subject to a monthly minimum of 200,000 gallons. The contract further provided:

"5. (Modification of Contract) That the provisions of this contract pertaining to the schedule of rates to be paid by the Purchaser for water delivered are subject to modification at the end of every 2 year period. Any increase or decrease in rates shall be based on a demonstrable increase or decrease in the costs of performance hereunder, but such costs shall not include increased capitalization of the Seller's system. Other provisions of this contract may be modified or altered by mutual agreement."

The rate charged to city consumers on October 23, 1973, was a minimum charge of $2.50 for the first 2,000 gallons, $ .50 per

1,000 gallons for the next 24,000 gallons, and $ .40 per 1,000 gallons for the next 450,000 gallons. It appears that the City did not begin supplying water to defendant until sometime after July, 1978.

Subsequent to the execution of the contract, plaintiff made improvements in its water system. To finance those improvements, plaintiff issued revenue bonds in the amount of $310,000. The interest paid on these bonds is charged as an expense of the water department.

On or about April 10, 1979, plaintiff increased the rate for city water consumers to a minimum monthly charge of $5.00 for the first 2,000 gallons and $2.00 per 1,000 gallons thereafter. Plaintiff subsequently informed defendant that the rate under the water purchase contract would be increased to $2.00 per 1,000 gallons with a 200,000 gallon monthly minimum effective May 1, 1979. Defendant refused to pay the new rate on the ground that plaintiff had not demonstrated increased costs of performance exclusive of capitalization as required by the contract. Subsequent negotiations were unproductive and plaintiff initiated this action seeking to avoid the water purchase contract and enforce the new water rate.

The trial court held that the contract was not void or voidable, that there was no evidence that plaintiff had submitted information regarding increased costs of performance to the defendant as required by the contract, and that no evidence had been submitted to the court that would enable the court to determine costs of performance. The case was dismissed without prejudice on defendant's motion at the close of plaintiff's case and plaintiff has appealed.

Plaintiff's first point on appeal is that the trial court erred by failing to find that the water purchase contract was ultra vires per se. Plaintiff contends that the rate established in the contract was so unreasonable as to amount to a gift of city property. Since the City has no authority to make gifts of city property, the contract would therefore be ultra vires.

Plaintiff's authority to sell water is found in K.S.A. 12-808:

"Subject to the provisions of K.S.A. 66-104 and 66-131, and amendments thereto, any city operating waterworks, fuel, power, or lighting plant may sell and dispose of water, fuel, power or light to any person within or without said city."

Setting the price or rate for the sale of water is a legislative or

administrative, not a judicial, function. *Shawnee Hills Mobile Homes, Inc. v. Rural Water District,* 217 Kan. 421, Syl. ¶ 5, 537 P.2d 210 (1975). Courts have no supervisory power over legislative functions of a municipality and cannot substitute their judgment for that of the governing body. "Courts can only interfere to curb action which is *ultra vires* because of some constitutional impediment, or lack of valid legislative authority, or unlawful acts under a valid statute, or because action under a valid statute is so arbitrary, capricious, unreasonable and subversive of private rights as to indicate a clear abuse rather than a *bona fide* exercise of power." *Schulenberg v. City of Reading,* 196 Kan. 43, 52, 410 P.2d 324 (1966).

"The authority to sell municipal property carries with it the power to decide upon the terms of the sale, and since this power is discretionary, a sale made under it cannot be annulled on the ground that the bargain was an improvident one. But the power to sell does not include the power to make a gift of municipal property. Nor, ordinarily, can a municipal corporation lawfully sell its property for a grossly inadequate price, since such a transaction is in effect a gift of public funds." 56 Am. Jur. 2d, Municipal Corporations § 552, p. 606.

At trial, the City introduced evidence indicating that in 1973 it produced a total of 19,210,000 gallons of water for a cost of $31,277.45, excluding meter refunds, or $1.62/1,000 gallons. The relevant issue, therefore, is whether, in view of the total cost of production of $1.62/1,000 gallons, the contract rate of $ .60/1,000 gallons, subject to biannual adjustment, is so arbitrary, capricious and unreasonable as to indicate a clear abuse of the City's rate-making authority.

We find that this question must be answered in the negative. In making this determination we note two facts which are significant. First, with the exception of the monthly minimum charge, the rate set by the contract is greater than the rate at which plaintiff sold water to city consumers at the time the contract was executed, and second, the contract provides for rate adjustments every two years. Plaintiff is not locked into the original rate for the entire term of the contract.

It appears that the primary reason for the rate increase to city consumers in April, 1979, was the increased water department expense due to the revenue bonds. Plaintiff's subsequent attempt to charge the same rate to defendant violated the terms of the water purchase contract. Rather than negotiate a new rate under the terms of the contract, plaintiff attempted to avoid the contract

entirely. While it may be that the decision to exclude plaintiff's capitalization costs as a factor in future rate adjustments was an improvident one, after careful examination of the record we cannot say that the water purchase contract, when executed, was so arbitrary, capricious and unreasonable as to indicate a clear abuse of plaintiff's rate-making authority.

Plaintiff's second point on appeal is that its rate-making authority is governed by K.S.A. 12-856 *et seq.* Since K.S.A. 12-860 requires the establishment of rates sufficient to pay the cost of operation, repairs, maintenance, extension and enlargement, improvements, and new construction and bonds issued therefor, plaintiff contends that the water purchase contract prevents the establishment of such rates and is therefore ultra vires.

K.S.A. 12-857 limits the application of K.S.A. 12-856 *et seq.* to the operation of combined waterworks and sewage disposal systems. It is clear from the record that plaintiff does not operate such a combined system, and therefore its rate-making authority is not governed by K.S.A. 12-860.

Plaintiff's final point on appeal is that if the water purchase contract is ultra vires and therefore void, defendant should have the burden of proving that the new rate is unreasonable. In light of our finding on the ultra vires issue, plaintiff's final contention is moot.

Affirmed.