No. 89,452

EUDORA DEVELOPMENT COMPANY OF KANSAS, *et al.*, *Plaintiffs/Appellants*, v. CITY OF EUDORA, *Defendant/Appellee*.

(78 P.3d 437)

Opinion filed October 31, 2003.

*James B. Jackson,* of Independence, Missouri, argued the cause, and *Bruce Keplinger,* of Norris & Keplinger, of Overland Park, was on the briefs for appellant.

*Justice B. King,* of Fisher, Patterson, Sayler, & Smith, L.L.P., of Topeka, argued the cause, and *Kristine A. Larscheid,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Eudora Development Company of Kansas, L.P., (Pine Crest I) and Eudora Senior Housing, L.P. ( Pine Crest II) appeal from a summary judgment granted to the City of Eudora on their claim that water and sewer rates were discriminatory because they were required to pay a surcharge for each "domestic unit" in the multi-unit buildings of Pine Crest I and II, which were served by one meter for each building. The court determined that the different rates for residences served by one meter and those multi-unit buildings served by one meter had a rational basis unimpeached by Pine Crest I and II. We affirm.

In a well reasoned opinion, the district court found the following facts, which the parties do not contest in this appeal:

### "FINDINGS OF FACT

"1. The plaintiffs [Pine Crest I and II] in this case are limited partnerships which own multi-unit buildings in Eudora, Kansas.

"2. Plaintiff, Eudora Development Company of Kansas, L.P., owns 939 Pine Street, also known as Pine Crest I, in Eudora, Kansas. It has twenty-four (24) apartment units.

"3. Plaintiff, Eudora Senior Housing, L.P., owns 924 Walnut, also known as Pine Crest II, in Eudora, Kansas. It has thirty-six (36) apartment units.

"4. Pine Crest I was opened in August of 1994.

"5. Pine Crest II was opened in February of 1990.

"6. The City of Eudora has provided all water and sewer services used by the Pine Crest I and Pine Crest II.

"7. The water rates are established by city ordinances.

"8. Starting with Ordinance 484 enacted September 26, 1983, effective October 15, 1983, a surcharge began to be imposed by the City of Eudora. Ordinance 484 provided a schedule for charges per gallon of water, and in addition, provided that when a single water meter provided service to one or more domestic units, the applicable rates would apply to only one domestic unit, and, in addition, there would be a surcharge of $6.00 for each additional domestic unit.

"9. Ordinance 484 also provided that where multi-unit buildings were served by one water meter, each domestic unit would pay a minimum service charge of $4.00 per month, and, in addition, pay a sewer treatment charge of $0.60 for each 1,000 gallons purchased over and above 5,000 gallons.

"10. The definition of 'domestic unit' set forth in Ordinance No. 484 was as follows:

'For the purpose of this ordinance the term "domestic unit" shall include residence, mobile home, each separate apartment, cottage or cabin, condominium or individually owned apartment.'

"11. No water allotment was granted for any of the additional 'domestic units' that paid the surcharge.

"12. This basic approach to water rates continued until May 26, 1999, and for sewer rates until January 13, 1999. The charges changed over the years, but some type of charge per domestic unit remained in place throughout this entire time period."

Additional findings of fact necessary for a determination of the issues were also made by the district court in its memorandum decision. We include those facts, as well as additional facts in the record that support our decision.

In their petition, Pine Crest I and II alleged grounds for a class action which the district court rejected and which are not questions in this appeal. Pine Crest I and II advanced claims for an injunction, inverse condemnation, restitution in violation of the Fifth and Fourteenth Amendments to the United States Constitution, a claim under 42 U.S.C. § 1983 (2002), claims for damages, and a request for an accounting. None of these claims were addressed by the district court based upon its decision that a claim for discrimination did not exist.

District Court Judge Paula Martin's decision is well reasoned and supported by law; her decision provides a reasoned disposition of the critical issue raised by Pine Crest I and II: discriminatory water and sewer rates. The district court concluded:

"Under Kansas statutory law, the City of Eudora has the authority to operate a water and sewage works. *See* K.S.A. 12-808. K.S.A. 12-860 requires that the rates established by the City for water and for use of the sewage disposal system be reasonable. The setting of rates is a legislative function. *City of Strong v. Rural Water District # 1*, 6 Kan. App. 2d 859, 860-61, 636 P.2d 192 (1981):

'Courts have no supervisory power over legislative functions of a municipality and cannot substitute their judgment for that of the governing body.

"Courts can only interfere to curb action which is ultra vires because of some constitutional impediment, or lack of a valid legislative authority, or unlawful acts under a valid statute, or because action under a valid statute is so arbitrary, capricious, unreasonable and subversive of private rights as to indicate a clear abuse rather than a bona fide exercise of power.' " *Id.* at 861, citing *Schulenberg v. City of Reading*, 196 Kan. 43, 52, 410 P.2d 324 (1966).

"It is generally recognized that water rates set by a municipality are presumed to be valid and reasonable until the contrary has been established. *Shawnee Hills Mobile Homes, Inc. v. Rural Water District*, 217 Kan. 421, 429, 537 P.2d 210 (1975), citing *Usher v. City of Pittsburg*, 196 Kan. 86, 90, 410 P.2d 419 (1966), 94 C.J.S., *Waters* § 289a, p. 173. The burden of overcoming the presumption of validity and reasonableness rests with the challenging party. See *West Elk Unified School District v. City of Grenola*, 211 Kan. 301, 507 P.2d 335 (1973), quoting *Mullins v. City of El Dorado*, 200 Kan. 336, 436 P.2d 837 (1968).

"Plaintiffs do not claim that the rates they are charged are excessive or unreasonable. They do not claim that defendant is making an excessive profit from providing water and sewer services. They claim that the rates they were charged are discriminatory.

"The law does not prohibit different classes of users being charged according to different rate plans. Kansas courts have recognized that discrimination is a relative term and that absolute equality is seldom, if ever, fully realized. *Shawnee*, 217 Kan. at 432. The Court in *Shawnee* quoted with approval from *Knotts v. Nollen*, 206 Iowa 261, 218 N.W. 563 (1928):

'Discrimination, to be unlawful, must be unjust and unreasonable. It must operate to the unjust advantage of. . . another. . . . However, absolute uniformity is impossible of attainment. . . . Classification, within just and reasonable limits, is proper and permissible. The presumption is in favor of the rate and rule established by the rate-making authority.' 217 Kan. at 429-30.

"Plaintiffs have established that multi-family buildings with a single meter are charged for water and sewer services in a different manner than are single family units or multi-family buildings with one meter per unit. The plaintiffs, while quoting from *Knotts v. Nollen, supra,* then argue that the ordinance is discriminatory on its face, leaving out any analysis of the requirement that the discrimination be unjust and unreasonable. Neither the common law nor the statutes forbid reasonable classification of rates or discrimination so long as it is not unjust, but is reasonable in view of substantial differences in services or in conditions of service. *Lewis v. City of Cumberland,* 189 Md. 58, 54 A.2d 319 (1947), citing *Texas and Pacific Railway v. Interstate Commerce Commission,* 162 U.S. 197, 16 S. Ct. 666, 40 L. Ed. 940 [1896].

"The question before the court is not whether the Eudora ordinances assess a surcharge for water and sewer to owners of multi-unit buildings having only one water meter or even whether the ordinances embody the best possible classification of rates. The issue is whether the ordinances are so unjustly discriminatory and therefore, so clearly unreasonable that they are invalid.

"In *Peden v. Kansas Department of Revenue,* 261 Kan. 239, [930 P.2d 1, *cert. denied* 520 U.S. 1229] (1997), in which a taxpayer argued that the taxation classifications were discriminatory against single taxpayers, the Court utilized the rational basis standard to determine whether the classification, which resulted in unequal taxation, bore a reasonable relationship to a valid legislative purpose. The Court held that it is unnecessary to ascertain the specific purpose espoused in establishing the challenged classification. 'All that is necessary is that the court perceives one or more of the interests could reasonably and rationally justify the disparate tax rates. See *Beach Communications, Inc.,* 508 U.S. at 315; see also *Stephenson,* 250 Kan. at 774.' *Id.* at 259.

"If there is any rational basis for distinguishing between owners of multi-unit buildings having only one water meter and other users who have a meter in each domestic unit the classification must be upheld. The defendants suggest that the surcharges are justified for two reasons: (a) to equalize the cost between multi-unit buildings where the owner paid for only one meter for multiple domestic units as compared to a single family residence or multi-unit building where an initial meter installation was paid for each domestic unit, and (b) to obtain payment for the dense impact imposed upon the utility systems by multi-unit buildings having only one meter as opposed to single family residences or multi-unit buildings having a meter in each domestic unit.

"In support of their claim of discrimination, plaintiffs rely solely on the testimony of Mr. Bill Sankpill. Mr. Sankpill's knowledge regarding the City of Eudora's rate structure for water and sewer services comes entirely from his review of the city ordinances. His opinion is based on his work in other communities. While Mr. Sankpill agrees that a utility may apportion the costs among different classes of consumers, attempting to assign the cost of the services as closely as possible to where the costs are incurred, he failed to consider any of the factors which would have a bearing on a rate structure that would so apportion costs.

"He did not analyze whether the sewer usage for apartment dwellers and single family dwellers in the City of Eudora follows what he claims is the national average. He did not review any compilation of data concerning the City of Eudora's water and sewer utility regarding the costs of storage facilities, transmission and distribution lines, transportation equipment, labor and other expenses and the number of meters by size. He did not analyze the cost to the City of Eudora of installing two (2") inch line master meters for apartment complexes or three-quarter (¾") inch line for single family dwellings. He has not reviewed any data regarding the size of the transmission mains or other operational aspects of the Eudora system. Mr. Sankpill did not review the cost charged by the City for the installation of master meters for apartment buildings as opposed to the cost charged for installation of single family meters. He has not analyzed any City records to determine if there is a difference in cost to the City of providing sewer services to a single family residence as opposed to providing it to a multi-family building with one meter. Mr. Sankpill has reviewed no information, other than the ordinances, that is specific to Eudora. He cannot state that Eudora costs, usage, *etc.* are the same or even similar to other systems he has analyzed. Mr. Sankpill merely reviewed the ordinances in effect from 1983 to 1999 and, based on his experience in other communities, concluded that they were discriminatory.

"Further, plaintiffs ignore the fact that it was the choice of the owner to install a single meter when the buildings were constructed. Such a choice is inherent in the ordinances themselves. The rate structure of which plaintiffs now complain was in effect at the time the owners chose the manner of metering the units and are a matter of public record. Had plaintiffs wanted to be considered in the same classification as a single family home, that option was available to them. Having chosen a single meter for their multi-unit buildings, they chose the attending rate plan.

"Plaintiffs have failed to come forward with evidence to negate that there is a rational basis for the difference in rates. They have failed to come forward with any facts of evidentiary value that the rate classifications are unjust or unreasonable. Having failed to establish essential elements of their claim, defendant is entitled to summary judgment.

"It is unnecessary to consider the remaining issues raised by the parties in their respective motions.

"Defendant's Motion for Summary Judgment is granted."

We agree with the district court. On appeal, we apply the same rules as the district court in reviewing a summary judgment. See *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1275, 38 P.3d 679 (2002). Moreover, we, like the district court, note:

"When the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, however, there can be 'no genuine issue as to any material fact,' because a 'complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.' *Colotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A non-moving party must come forward with facts of evidentiary value that show essential elements of their case are met in order to avoid summary judgment. The movant is entitled to prevail if he can establish that there is an absence of evidence to support the opposing party's case. *Crooks v. Greene*, 12 Kan. App. 2d 62, 64, 736 P.2d 78 (1987)."

For the reasons stated in the district court's decision, Pine Crest I and II failed to make a showing sufficient to establish the existence of an element essential to their case, *viz.*, that the City of Eudora's rates are discriminatory or that the rates charged are unjust or unreasonable. Such a failure renders all other facts immaterial and supports summary judgment in favor of the City of Eudora. We, therefore, affirm and adopt the decision of the district court.

Affirmed.