NOT DESIGNATED FOR PUBLICATION

No. 118,690

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THE CITY OF AUGUSTA, KANSAS,
*Appellant*,

v.

THE CITY OF MULVANE, KANSAS,
*Appellee.*


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed December 7, 2018. Affirmed.

*Austin K. Parker*, city attorney, for appellant.

*James A. Walker* and *Neil C. Gosch*, of Triplett Woolf Garretson, LLC, of Wichita, for appellee.


Before STANDRIDGE, P.J., MALONE, J., and STUTZMAN, S.J.


PER CURIAM: The City of Augusta (Augusta) appeals from an order granting summary judgment to the City of Mulvane (Mulvane), denying Augusta's prayer for a declaration it could charge Mulvane more for treated water than was specified in a contract the two cities signed in 1990. We find no error in the district court's action and affirm.

1

On July 16, 1990, Augusta and Mulvane contracted for Augusta to sell and Mulvane to buy treated water for 40 years (the Agreement). In the Agreement, Augusta represented it had the treatment facilities to produce a sufficient quantity of water to sell to Mulvane, which wanted to lock in a "primary source of treated water" for its residents. Mulvane agreed, therefore, to buy treated water from Augusta, which would, in turn, "supply pursuant to the terms" of the Agreement the quantity of treated water that was specified. The 40-year term of the Agreement started either from the date of Mulvane's first receipt of water from Augusta or April 1, 1991, whichever occurred first.

The Agreement calls for an initial cost to Mulvane of $1.50 per thousand gallons of treated water and requires Mulvane to buy 150,000,000 gallons of water per year. Mulvane is entitled, however, to buy up to an additional 50,000,000 gallons per year, paying for the quantity consumed. The Agreement makes Augusta responsible for the operation and maintenance of the pipeline transporting the treated water from Augusta to Mulvane and prohibits Mulvane from buying treated water for its municipal water system from any other source. Only one paragraph of the Agreement addresses modification of the contract price:

> "The initial price for the purchase of treated water shall be the sum of $1.50 per thousand gallons except as hereinafter provided. Mulvane shall be presented with an invoice from Augusta monthly and payment of such invoice shall be due twenty (20) days after receipt of the invoice by Mulvane. Notwithstanding the other terms of this agreement, the parties agree that beginning on January 1, 1995 and every five (5) years thereafter during the term of this agreement or any extension thereof, the parties shall review and modify the price per thousand gallons of treated water concurrent with a similar review between the City of El Dorado and Augusta concerning the purchase of raw water by Augusta. *The price of treated water to Mulvane shall be adjusted in the same amount as the cost of raw water is modified by the City of El Dorado in their review with Augusta.*" (Emphasis added.)

Some years after signing the Agreement, Augusta issued revenue bonds to finance improvements to its water facilities. In doing so, Augusta told potential bond purchasers in 2001, 2004, and 2010 that the only charge that could be passed on to wholesale customers, including Mulvane, was the direct increase in the cost of raw water purchased by Augusta from the City of El Dorado.

Twenty-five years after signing the Agreement, in August 2015, Augusta filed suit against Mulvane, petitioning for a judgment declaring it had the right to adjust the rate Mulvane paid for water to adequately reflect the costs of principal and interest payments on Augusta's revenue bonds. Augusta contended the right to make a price adjustment for that reason had to be an implied term of the Agreement, because without it the contract would be void for violating K.S.A. 10-1208.

After completing discovery, both Augusta and Mulvane moved for summary judgment. Mulvane argued the Agreement was unambiguous and enforceable as written, asserting Augusta "simply want[ed] to raise the price Mulvane pa[id] Augusta for water so as to avoid raising the rates charged to its constituents and local businesses." Mulvane contended that if Augusta needed further revenue to meet the requirements of K.S.A. 10-1208, it had the authority to charge different rates to various categories of its other water customers—it did not have to exceed Mulvane's contracted cost. Mulvane maintained "Augusta cannot simply change the terms in the middle of the [A]greement because it no longer likes the deal."

Presented with the opposing motions for summary judgment, the district court denied Augusta's motion and granted Mulvane's, thereby upholding the Agreement as written. It found K.S.A. 10-1208 did not require Augusta to collect the necessary funds for payments on the bonds equally from all users. If Augusta's revenue sources were not sufficient to meet that need, the district court held "it can raise rates or fees with respect

3

to its other residential and commercial customers not encompassed by the 40-year agreement."

Augusta timely appeals.

ANALYSIS

Augusta frames its issue in the alternative: either the Agreement must be construed to include an implied provision allowing annual review by Augusta for potential adjustment of the rate charged to Mulvane, or the Agreement is "ultra vires and void ab initio" because it fails to expressly allow those reviews and adjustments so Augusta can comply with K.S.A. 10-1202(a) and K.S.A. 10-1208. Both Augusta and Mulvane agree this appeal presents no factual dispute. Our review of the district court's order granting summary judgment, therefore, is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

Augusta contends K.S.A 10-1202(a) and K.S.A. 10-1208 require it to establish "adequate water utility rates for all of its customers," including Mulvane, and the obligation is not one it can contract away. Based on that premise, Augusta now argues it lacked any authority to enter into an agreement with Mulvane that did not include either an express or implied provision for adjustment to Mulvane's price for treated water to account for system improvements and bond payments. Without that authority, Augusta claims it is in violation of the statutes.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). We must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, we do not speculate about

4

the legislative intent behind that clear language and we do not read something into the statute that is not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

K.S.A. 10-1202(a) grants municipalities the right to issue and sell revenue bonds to pay for the purchase, construction, or repair of utilities. It also grants municipalities the right to set the rates and fees that may be charged for use of the utilities. In relevant part, that section states:

> "Any municipality authorized by the laws of the state of Kansas to issue general obligation bonds for the acquisition, construction, reconstruction, alteration, repair, improvement, extension or enlargement of any utility is hereby empowered to issue and sell revenue bonds in payment of the cost of such utility or improvements, to fix by ordinance or resolution such rates, fees and charges for the use thereof or services therefrom as may be reasonable and necessary and to provide for the manner of collecting and disbursing such revenues subject to the limitations hereinafter contained."

K.S.A. 10-1208(a) requires municipalities to establish rates and fees for use of a utility sufficient to pay for the cost of operating, maintaining, and improving the utility as well as paying the principal and interest on any revenue bonds issued for the project. Under K.S.A. 10-1208(b), a municipality must conduct an annual audit of utilities for which revenue bonds have been issued and, if the amount being collected is not enough to meet the requirements imposed in K.S.A. 10-1208, the municipality must adjust the rates and fees to comply.

Augusta insists that if it fails to include Mulvane in the charges for water system improvements it will stand in violation of the statutory provisions in K.S.A. 10-1201 et seq. From that premise, Augusta reasons further that the right to impose a rate increase on Mulvane for those improvements must either be deemed an implicit part of the

5

Agreement or the Agreement itself is void ab initio. Although Augusta asserts it has been left on the horns of a dilemma, it is only entitled to relief if the dilemma is real. It is not.

Clearly, Augusta has the statutory authority both to issue revenue bonds to pay for the purchase, construction, or repair of its water utility and to set the rates, fees, and charges for using it. The rates Augusta sets have to deliver enough revenue for both the operation, improvement, and maintenance of the system and the payment of the principal and interest on the bonds. However, nothing in the plain language of K.S.A. 10-1202(a) or K.S.A. 10-1208 requires Augusta to collect that level of revenue by assessing the rates, fees, or charges to all the users of its water utility.

Our Supreme Court has held that charging different rates to various identified classes of users—when done in a manner falling within broad constitutional limits—does not contravene Kansas law. See *Eudora Development Co. of Kansas v. City of Eudora*, 276 Kan. 626, Syl. ¶ 5, 78 P.3d 437 (2003). Augusta acknowledges it has that authority and contends it has never argued to the contrary. But Augusta also asserts the stability of the market for bonds requires across the board recovery of bond expenses "to give bond purchasers confidence in the ability of cities to recover adequate rates, fees and charges from all water utility users."

Augusta's claim that bond purchasers rely on its ability to set rates for *all* users at a level sufficient to operate the plant and service the bonds is at odds with the established facts of this case. On at least three occasions, Augusta advised potential bond purchasers that the *only* charge that could be passed on to wholesale customers, including Mulvane, was the direct increase in the cost of raw water Augusta buys from the City of El Dorado. That advice notwithstanding, the facts suggest Augusta was able to sell bonds for the improvements.

6

While K.S.A. 10-1202 and K.S.A. 10-1208 do require Augusta to set rates that will allow it to take certain responsible actions for the operation and improvement of its water plant and for the payment of bond principal and interest, those statutes do not prescribe how those rates must be structured or dictate that they be levied against all water customers. Undoubtedly, assessing some of those expenses to Mulvane would mitigate the degree to which Augusta needs to meet the costs through rates charged to its other users. Mulvane, however, has something the other users do not—a 40-year contract to buy water under its own specified rate structure. Augusta has shown nothing that mandates either judicial modification of that contract or its abrogation.

On the other side of the Agreement, Mulvane committed itself to pay for a certain amount of water from Augusta every month for 40 years. In 1990, Augusta deemed that a sufficient benefit to warrant signing the Agreement. Since Augusta's statutory obligations can be satisfied through the rate structure for its other customers, there is no basis either for inserting a term that is not in the Agreement or declaring it void. The material facts were uncontroverted, and the district court properly took up the case on the motions for summary judgment each party filed. We find no error in the district court's decision to deny Augusta's motion and to grant summary judgment in favor of Mulvane.

Affirmed.